MURRAY, Appellant, vs. BUELL and others, Respondents.

*February 25 — March 12, 1889.*

*New trial: Excessive damages: Remission: Discretion: Appeal.*

1. The circuit court may require a plaintiff to remit excessive damages as a condition of denying a motion for a new trial.
2. A new trial should not be granted on the ground of excessive damages unless it is clear that the damages are materially greater than the evidence will justify; but an order granting a new trial on that ground will not be reversed unless it is clear that the damages are *not* greater than the evidence will justify.
3. In an action for a conspiracy to control and monopolize the sale of coal in a city and to drive the plaintiff out of the business, the evidence showed, among other things, that the actual profits lost by the plaintiff on pending contracts was less than $750; that he had no established business, and no plans to continue in the business beyond the current year; that he was merely an agent or a silent partner of one of the defendants, in whose name and with whose capital the business was conducted, and who had consented to the acts of the other defendants. The jury awarded the plaintiff $4,750. *Held,* that there was no abuse of discretion in granting a new trial on the ground that the damages were excessive.

APPEAL from the Circuit Court for *Waukesha* County. The facts are sufficiently stated in the opinion.

For the appellant there was a brief by *Clarke & McAuliffe*, attorneys, and *J. C. McKenney* and *D. J. Hemlock*, of counsel, and the cause was argued orally by *J. C. McKenney* and *J. M. Clarke*. They cited 1 Suth. on Damages, 810, and cases cited; 5 Am. & Eng. Ency. of Law, 54; 3 Suth. on Damages, 385–387; *Poposkey v. Munkwitz*, 68 Wis. 322; *Brown v. C., M. & St. P. R. Co.* 54 id. 342; *Shepard v. Milwaukee G. L. Co.* 15 id. 318; *Chicago v. Smith*, 48 Ill. 107.

For the respondents there was a brief signed by *Shepard & Shepard*, attorneys for the respondent *Buell*, and the cause was argued orally by *F. C. Winkler*, *A. H. Bright*, and *C. E. Shepard*.

ORTON, J. The main facts stated in the complaint are substantially as follows: During the season of 1886 the defendants and others (except the defendant *McGarigle*), who were engaged in the business of selling coal in the city of Milwaukee, conspired and formed an association for the purpose of controlling and monopolizing the entire sale of coal in said city and preventing competition therein, and of fixing uniform prices at which the various kinds of coal should be sold in said city, and of preventing all dealers in coal in said city from selling coal at less rates than the price so fixed. The defendant *McGarigle* had opened the business of selling coal in the city for that season on his own account, and at the request of the plaintiff they became associated in the business from May 1, 1886, and *McGarigle* agreed to pay the plaintiff one half of all of the profits of the business, and allow him to draw upon his share of the business $35 per month for five months, and after that date such sums of the profits as the business would allow. The business was conducted in the name of *McGarigle*, and the

plaintiff was to do the business of selling and delivering coal, and keep the books. When the plaintiff made bids to sell large amounts of coal to the school board of Milwaukee and to other institutions and persons at a certain price, and could have obtained the contracts, the defendants "maliciously, unlawfully, and wickedly" conspired to compel him to withdraw his bids, by threatening him to shut up his business and that they would furnish him no more coal if he did not do so. Believing himself unable to contend against the defendants, he withdrew his bid to furnish coal to said school board, and they paid him and *McGarigle* $700, one half of which he received for doing so, but he thereby lost a profit of $1,000. The defendants, in furtherance of the conspiracy, refused to sell the plaintiff and *McGarigle* coal to fill contracts they had to sell and deliver coal to Robert Chivas Post, and the *Knights of Labor*, and others, and wrote letters addressed to their customers stating that if the plaintiff had contracted to sell coal for less than $6.50 per ton such contracts were unauthorized and were canceled. By these means the defendants caused the plaintiff to lose large profits upon sales of coal, and drove him out of the business, and injured his reputation, to his damage of $10,000.

These facts, excepting the amount of damages, were substantially proved upon the trial, and the jury found a verdict for the plaintiff of $4,750. The defendants moved for a new trial, mainly on the ground that the verdict was excessive. Before disposing of the motion, the court, believing that the verdict was excessive, ordered that if the plaintiff would remit $3,250 from the verdict the motion for a new trial would be denied, otherwise it would be granted; and the plaintiff having refused to so remit, the motion was granted. The plaintiff has appealed from said order.

There is probably nothing to be considered on this ap-

peal except the order granting the new trial on the ground that the verdict is excessive. But counsel having raised the question whether the trial court had the right to require the plaintiff to remit the excessive damages as a condition of denying the motion for a new trial on that ground, it may be proper to say that such right is undoubted. *Schultz v. C., M. & St. P. R. Co.* 48 Wis. 375; *Corcoran v. Harran*, 55 Wis. 120; *West v. M., L. S. & W. R. Co.* 56 Wis. 324; *Mechelke v. Bramer*, 59 Wis. 58; *Wright v. Ft. Howard*, 60 Wis. 125; *Baker v. Madison*, 62 Wis. 150; *McLimans v. Lancaster*, 63 Wis. 609. Whether the sum which the circuit court required the plaintiff to remit as a condition of judgment for the residue of the verdict was reasonable we will not undertake to determine. The circuit court is more competent to determine such specific amount than this court can be from the mere record, and the question is scarcely involved in the order appealed from. The practice of granting new trials for excessive damages is too well established to need reference to authorities, and the true ground for such interference with verdicts is equally well established. It should appear to the trial court that the jury have been influenced or misled by "passion, prejudice, or ignorance." Whether a less stringent rule would justify the court in requiring the successful party to remit a specific part of the damages found by the jury, as a condition of rendering judgment for the residue, need not be determined in this case. The very large proportion of the damages required to be remitted, sufficiently evinces that it was the opinion of the court that the verdict was so outrageous as to make it appear that the jury was misled by passion, prejudice, or ignorance. We can scarcely conceive how a jury, in such a case, could find a verdict of so large an amount, and over two thirds, or 317 per cent., too much to be justified by any possible reason or testimony, except through passion, prejudice, or ignorance. Although

Murray vs. Buell and others.

not directly acting upon the question whether the trial court was right in exacting such terms for the rendition of a judgment for the plaintiff, we may nevertheless accept such terms as indicating the opinion of the court that the verdict was far beyond the real damages of the plaintiff proved.

It is claimed that the rule in such cases is, as in all others of granting new trials, that this court should not reverse the order unless there was a clear *abuse* of discretion on the part of the trial court in granting it. I know of no reason why this rule should not prevail in the appellate court in respect to an order granting a new trial for excessive damages, as well as in respect to such an order for other causes. It must always be a matter of discretion. There are different kinds of discretion that may be exercised by the trial court. There is a discretion in the sense of an exclusive right to decide as that court pleases, which will not be revised by this court. There is a discretion "in the decision of what is just and proper under the circumstances" (Bouv. Law Dict. tit. DISCRETION); or according to the judgment of the court (Webster). The latter kind of discretion will not be reviewed unless there is an *abuse* of it; that is, unless it appears that it was exercised on grounds or for reasons clearly untenable, or to an extent clearly unreasonable. That would be its abuse. In all cases courts must exercise a discretion in the sense of being discreet, circumspect, prudent, and exercising cautious judgment. When they clearly do not do this, it is an abuse of discretion. That discretion is exercised by the trial court in granting a new trial for an excessive verdict, as for newly discovered evidence or for other cause. The trial court is more competent, by reason of having heard the witnesses testify and having the better means of weighing their testimony than this court can have; and therefore there should appear to have been an abuse of discretion, by being without or beyond all reason,

to justify this court in reversing such an order. That rule would seem reasonable in all cases. A new trial should not be granted on the ground of excessive damages *unless it is clear* that the damages are materially greater than the evidence will justify. *Bass v. C. & N. W. R. Co.* 39 Wis. 636; *Roberts v. C. & N. W. R. Co.* 35 Wis. 679. This court will not interfere in such a case unless it *as clearly* appears that the damages are *not* greater than the evidence will justify, or that the order granting the new trial was an abuse of the discretion of that court for that reason. This court must, of course, review such an order, because it is appealable (R. S. sec. 3069, subd. 3); but this, I understand, is the true rule of judging of it, conceding to the trial court superior advantages or facilities of exercising a sound legal discretion, with a strong presumption in its favor. We may therefore look into the evidence in this case, with the view of determining whether there appears to be any evidence to sustain such a large verdict. If there is not, then the circuit court had reason to believe that the jury were misled, at least by their *ignorance,* if not by their passion and prejudice, and the order should be affirmed.

The term " *abuse* of discretion " exercised in any case by the trial court, as used in the decisions of courts and in the books, implying in common parlance a bad motive or wrong purpose, is not the most appropriate. It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. It may be proper to say, in respect to the verdict in this case, that it appearing to the jury that the defendants had unlawfully and wrongfully conspired and combined to raise the price of coal to the consumer, and to monopolize the market, and to suppress all competition, they may have thought that *punitory* or *exemplary* damages would be just and proper; and it would not be surprising if they had some unconscious prejudice against such a conspiracy, in common with

all men, which might have influenced them in bringing in a larger verdict than the facts and the law would justify.

Without stating the evidence, but having examined and considered it fully, it is quite apparent that the plaintiff was damaged by the loss of actual profits on pending contracts less than half of the verdict of $1,500 allowed by the circuit court. The balance or residue of the $1,500 was allowed by the court to cover any damages he might have sustained by the utter destruction of his business, and loss of good-will of trade for that reason. This at best was merely speculative and approximate. The plaintiff had no established business in the trade, with known or ascertainable profits as *data* by which to estimate his loss of profits on his general business. It was his first season in the trade in this way, and, so far as known, was to be his only season. He had no arrangements or plans to continue in the business beyond the current year. He did business in the name of *McGarigle* and on his responsibility and capital, and his good-will of trade was less on that account. They had but very little, if anything, invested in the business; no independent means of executing their contracts, or for the delivery of coal to their customers. They had to hire wagons and teams for such purpose as they needed them. They had no stock or supply of coal of their own, and had to buy from time to time as they sold. The plaintiff had no capital invested in the business. He had to look to *McGarigle* for his half of the profits, or $35 per month. He was an agent, or at best a silent partner, of *McGarigle;* and, finally, *McGarigle* himself so far consented to the acts and conduct of the defendants as to make him chargeable as one of them. Under these peculiar circumstances, what was the plaintiff's loss on his general business of selling coal, and of his good-will of trade, for that one season of 1886, and in connection with *McGarigle?* The jury allowed the plaintiff for these general damages

at least $4,000.   This was one half, or his share, of such
damages, which would make the whole loss to the plaintiff
and *McGarigle* at least $8,000 on their general business,
with scarcely any investment besides their personal labor
and attention in buying, selling, and delivering coal from
time to time as they might find customers.   At first blush
this appears to be an enormous and outrageous verdict, far
beyond or without any testimony in the case.   Whether
the exact amount which the trial court required the plaint-
iff to remit is the real excess beyond reason and evidence,
this court, perhaps, ought not to decide, but it would seem
to be reasonable.   That the trial court did not abuse its
discretion in setting aside the verdict and granting a new
trial is beyond all question.

*By the Court.*— The order of the circuit court is affirmed.