GIBSON, ADMX., APPELLANT, *v.* MORRIS STATE BANK ET AL., DEFENDANTS; FINCH, RESPONDENT.

(No. 3,365.)

(Submitted March 21, 1914. Decided April 7, 1914.)

[140 Pac. 76.]

*Equity—Quieting Title—Deed Absolute—When Mortgage—Burden of Proof—New Trial—Findings—Insufficiency of Evidence—Quitclaim Deeds.*

New Trial Order—Insufficiency of Evidence—District Judges.
  1. A district judge other than the one who presided at the trial of a cause, a new trial in which is asked on the ground of insufficiency of the evidence to justify the findings, must be governed by the rule observed by the supreme court on appeal *viz.*: The findings must not be set aside unless there is a decided preponderance in the evidence against them, nor must they be disturbed when the evidence as pre-

sented by the printed record furnishes reasonable ground for different conclusions.

Quitclaim Deeds—Title Acquired.

2.   One who, though paying full value, accepts a quitclaim deed, takes such title only as his grantor had.

[As to effect of quitclaim deeds, see note in 105 Am. St. Rep. 854.]

Mortgages—Absolute Conveyance—Evidence.

3.   Evidence *held* to clearly preponderate against the finding of the trial judge that a deed, given by the owner of land to a bank to which he was heavily indebted, was intended to be absolute and not as a further security for the debt as contended by the debtor.

Same—Form—Absolute Conveyance.

4.   Where a deed absolute in form is given by a debtor to his creditor, and the indebtedness remains uncanceled, the conveyance is treated in equity as a mortgage.

Same—Burden of Proof—Character of Instrument.

5.   The burden which is upon him who alleges that an absolute deed is a mortgage to establish that fact by clear and convincing evidence, is sustained by showing that the debt for which the conveyance was executed remains uncanceled and is treated as an existing indebtedness.

Same—Character of Instrument—Retention of Evidence of Indebtedness—Effect.

6.   Where an absolute deed is given by a debtor to his creditor, and it appears that the antecedent debt has been canceled, the retention of the evidence of the debt by the grantee may be explained, but, if the indebtedness is not canceled and proceedings are instituted to enforce it, no explanation can avoid the conclusion that the deed was security only and not an absolute conveyance.

[As to effect of lapse of time on right to have deed declared a mortgage, see note in Ann. Cas. 1914C, 354.]

*Appeal from District Court, Madison County; W. A. Clark, Judge.*

ACTION by Mary Gleim against the Morris State Bank, Charles L. Finch, and others, in which Elizabeth Gibson, as administratrix of Mary Gleim, was substituted as plaintiff. From an order setting aside a decree in favor of the plaintiff and granting a new trial, plaintiff appeals. Affirmed.

*Messrs. Hall & Whitlock,* for Appellant, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

We contend that the rule that the action of the lower court will not be disturbed in such a case as this, unless there was a clear abuse of discretion does not apply, since Judge Clark was in no better position to pass upon the weight or sufficiency of the evidence, or the correctness of any of the rulings or proceedings

made or had at the trial of the case, than is this court. (See *Orr* v. *Haskell,* 2 Mont. 225; *Tyler* v. *Haggart,* 19 S. D. 167, 102 N. W. 682; *Lavin* v. *Kreger,* 20 S. D. 80, 104 N. W. 909; *Wallace* v. *Wallace,* 26 S. D. 229, 128 N. W. 144; *Spackman* v. *Gross,* 25 S. D. 244, 126 N. W. 389.)

Where a deed, absolute on its face, is shown, the burden of showing that such deed was intended to operate as a mortgage is upon the party claiming that such was the intention. (*Murray* v. *Butte etc. Min. Co.,* 41 Mont. 449, 110 Pac. 497, 112 Pac. 1132; *Ganceart* v. *Henry,* 98 Cal. 281, 33 Pac. 92; *Winston* v. *Burnell,* 44 Kan. 367, 21 Am. St. Rep. 289, 24 Pac. 477; *Bryant* v. *Broadwell,* 140 Cal. 490, 74 Pac. 33; *Betts* v. *Betts,* 132 Iowa, 72, 106 N. W. 928; *Renton* v. *Gibson,* 148 Cal. 650, 84 Pac. 186; *Cadman* v. *Peter,* 118 U. S. 73, 30 L. Ed. 78, 6 Sup. Ct. Rep. 957; 27 Cyc. 1024.) While a court of equity looks with suspicion upon any transaction which may tend to clog an equity of redemption, yet a mortgagor may transfer the mortgaged premises to the mortgagee and such transaction will be upheld in the absence of fraud. (*Green* v. *Butler,* 26 Cal. 595; *Swarm* v. *Boggs,* 12 Wash. 246, 40 Pac. 941; *Watson* v. *Edwards,* 105 Cal. 70, 38 Pac. 527.) In cases of this sort the question as to whether or not the transfer to the mortgagee is to be treated as an absolute conveyance is of course one of intention. (*Pike* v. *Gleason,* 60 Iowa, 150, 14 N. W. 210.)

The retention of evidences of indebtedness is certainly not conclusive evidence that the conveyance was intended as a mortgage, and in fact under the circumstance in this case it is not evidence at all. (*Gray* v. *Nelson,* 77 Iowa, 63, 41 N. W. 566; *Blair* v. *Squire,* 6 Cal. Unrep. 350, 59 Pac. 211; *Larson* v. *Dutiel,* 14 S. D. 476, 85 N. W. 1006; *Harmon* v. *Banking etc. Co.,* 60 Or. 69, 118 Pac. 188; *Rathbone* v. *Maltz,* 155 Mich. 306, 118 N. W. 991.)

It will doubtless be contended that the plaintiff in this case cannot avail herself of the rights of a *bona fide* purchaser because she took under a quitclaim deed. We admit that there is considerable authority to the effect that a purchaser under a quitclaim deed cannot be considered a *bona fide* purchaser; but

the trend of modern authority is certainly the other way, and such authorities hold that while a quitclaim deed conveys only what the grantor has, yet a purchaser under it, in good faith, does not take subject to latent equities. (*Nidever* v. *Ayers,* 83 Cal. 39, 23 Pac. 192; *Frey* v. *Clifford,* 44 Cal. 335; *Graff* v. *Middleton,* 43 Cal. 341; *Coombs* v. *Aborn,* 29 R. I. 40, 14 L. R. A. (n. s.) 1248, 68 Atl. 817; *Eger* v. *Brown,* 77 Kan. 510, 15 L. R. A. (n. s.) 459, 94 Pac. 803; *Hilligas* v. *Kuns,* 86 Neb. 68, 20 Ann.Cas. 1124, 26 L. R. A. (n. s.) 284, 124 N. W. 925; *McDonald* v. *Belding,* 145 U. S. 492, 36 L. Ed. 788, 12 Sup. Ct. Rep. 892; *Moelle* v. *Sherwood,* 148 U. S. 21, 37 L. Ed. 350, 13 Sup. Ct. Rep. 426.) A distinction is made between the case where the grantor purports to convey the land itself and the case where a mere transfer of the grantor's interest is intended. The deed in this case purports to transfer the land itself. The language used is not the ordinary language of a quitclaim deed, as will be seen by comparing the case with *Nidever* v. *Ayers,* cited above. The distinction referred to is clearly brought out in the case of *Prentice* v. *Duluth Storage etc. Co.,* 58 Fed. 437, 7 C. C. A. 293.

*Mr. W. A. Pennington,* for Respondent, submitted a brief and argued the cause orally.

The supreme court of California has steadfastly held, through a long line of decisions, that an appeal from an order granting or refusing a new trial by a judge who did not try the case, comes before the appellate court under exactly the same conditions and subject to the same presumptions as appeals in cases where the case was tried and order on motion for new trial made by the same judge. (*Wendling Lumber Co.* v. *Glenwood Lumber Co.,* 153 Cal. 411, 95 Pac. 1029; *Whitaker* v. *California Door Co.,* 7 Cal. App. 757, 95 Pac. 910; *Churchill* v. *Flournoy,* 127 Cal. 355, 59 Pac. 791; *Garton* v. *Stern,* 121 Cal. 347, 53 Pac. 904, 905; *Jones* v. *Sanders,* 103 Cal. 678, 37 Pac. 649; *Hausmann* v. *Sutter St. Ry. Co.,* 139 Cal. 174, 72 Pac. 905; *Altschul* v. *Doyle,* 48 Cal. 535; *Macy* v. *Davila,* 48 Cal. 646; *Wilson* v. *California Cent. R. Co.,* 94 Cal. 166, 17 L. R. A. 685, 29 Pac. 861; *Bradley* v. *Davis,* 156 Cal. 267, 104 Pac. 302.)

Plaintiff cannot claim anything as an innocent purchaser for value. She received from the bank a quitclaim deed, which gives her only such rights as the bank had. (*Wetzstein* v. *Largey,* 27 Mont. 212, 70 Pac. 717; *Butte Hardware Co.* v. *Frank,* 25 Mont. 344, 65 Pac. 1; *McAdow* v. *Black,* 6 Mont. 601, 13 Pac. 377; *Pellow* v. *Arctic Iron Co.,* 164 Mich. 87, Ann. Cas. 1912B, 827, 47 L. R. A. (n. s.) 573, 128 N. W. 918; *Starr* v. *Bartz,* 219 Mo. 47, 117 S. W. 1125; *Newberry* v. *Chicago Lumbering Co.,* 154 Mich. 84, 117 N. W. 592; *Messenger* v. *Peters,* 129 Mich. 93, 88 N. W. 209; *Peters* v. *Carter,* 80 Mich. 124, 20 Am. St. Rep. 508, 45 .N. W. 73.)

The law protects a necessitous debtor who signs away his rights under threats of foreclosure, even when the notes or evidences of debts are surrendered and canceled, but when, as in this case, the notes are held, credited, indorsed and transferred, and the mortgage is held, transferred and assigned, ''together with the notes therein described and the money due and to grow due thereon with interest'' and the assignment further states that the assignee ''may take all lawful means for the recovery of said money and interest,'' there is no escaping the conclusion that the transaction is a mortgage. The rule is recognized and declared by our own supreme court and it is the universal rule. (*Murray* v. *Butte etc. Min. Co.,* 41 Mont. 449, 110 Pac. 497, 112 Pac. 1132; *Rairden* v. *Hedrick,* 46 Mont. 510, 129 Pac. 498; *Worley* v. *Carter,* 30 Okl. 642, 121 Pac. 669, 671; *Todd* v. *Todd,* 164 Cal. 255, 128 Pac. 413; *Bradbury* v. *Davenport,* 114 Cal. 593, 55 Am. St. Rep. 92, 46 Pac. 1062; *Locke* v. *Moulton,* 96 Cal. 21, 30 Pac. 957; *Locke* v. *Moulton,* 132 Cal. 145, 64 Pac. 87; *Alexander* v. *Rodriguez,* 79 U. S. (12 Wall.) 323, 20 L. Ed. 406; *Simpson* v. *First National Bank,* 93 Fed. 309, 35 C. C. A. 306; Devlin on Deeds, secs. 1120, 1117, 1108; Jones on Mortgages, secs. 285, 325, 300, 266; 27 Cyc. 1011, 1012; 4 Kent's Commentaries, 159.)

*Mr. M. M. Duncan,* for Defendant Morris State Bank, submitted a brief.

A warranty deed is one of the most solemn documents known to the law. It will not be set aside, annulled or held to be other

than it purports to be on its face upon slight or trival evidence. Some courts have gone so far as to say that in order to change the effect of an instrument, in form a deed absolute, "it must be shown beyond a reasonable doubt that such instrument is not what it purports to be." (*Townsend* v. *Petersen*, 12 Colo. 491, 21 Pac. 619; *Tilden* v. *Streeter*, 45 Mich. 533, 8 N. W. 502; *Worley* v. *Dryden*, 57 Mo. 226; *Gerhardt* v. *Tucker*, 187 Mo. 46, 85 S. W. 552; *Farmers' etc. Bank* v. *Smith*, 61 App. Div. 315, 70 N. Y. Supp. 536; *Satterfield* v. *Malone*, 35 Fed. 445, 1 L. R. A. 35.) But the better rule appears to be "that when there is an absolute deed in form, either with or without a contemporaneous agreement for the resale of the property, there being nothing on the face of the collateral papers to show a contrary intent, the presumption of law, independent of evidence, is that the transaction is what it purports to be, and he who asserts that the writing should be given a different construction must show by clear and convincing evidence that a mortgage and not a sale was intended." (*Johnson* v. *National Bank of Commerce*, 65 Wash. 261, 118 Pac. 21; *Kegley* v. *Skillman*, 68 Wash. 637, 123 Pac. 1081.) This rule has the support of at least two decisions of the supreme court of the United States. (*Wallace* v. *Johnstone*, 129 U. S. 58, 32 L. Ed. 619, 9 Sup. Ct. Rep. 243; *Bogk* v. *Gassert*, 149 U. S. 17, 37 L. Ed. 631, 13 Sup. Ct. Rep. 738.)

The *Gassert Case* mentioned was taken on a writ of error to the United States supreme court from a decision of the supreme court of this state and the above doctrine or rule was announced in that case by the United States supreme court.

As to whether a deed absolute in form is a mortgage, the test held by most authorities is this: Was the preceding debt extinguished, or was it continued? If extinguished, no mortgage, but deed. If continued, a mortgage and not a deed. (*Hickox* v. *Lowe*, 10 Cal. 197; *Bickel* v. *Wessinger*, 58 Or. 98, 113 Pac. 34; *McNamara* v. *Culver*, 22 Kan. 661.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was originally brought by Mary Gleim to foreclose two mortgages upon a tract of land situate in Madison county, and described as the west half and the southeast quarter of section 35, and the southwest quarter of section 36 in township 1 south of range 2 west of the Montana principal meridian. Subsequently the complaint was amended so as to change the action into one to quiet title. It was tried and decided upon the latter theory. After the appeal had been taken to this court, Mary Gleim died, and Elizabeth Gibson, the administratrix upon her estate, was substituted as plaintiff in her stead. The deceased obtained the title by quitclaim deed from the Morris State Bank of Pony, Montana, dated January 12, 1911. The title of the bank was evidenced by a warranty deed executed to it by the defendant Chas. L. Finch, dated January 7, 1907. This deed, though acknowledged, was not recorded. Prior to the date of the deed, Finch had become indebted to the bank in various amounts, for which he had executed his promissory notes as follows: One for $2,275, dated March 21, 1903; a second for $145, dated April 21, 1903; a third for $1,627.25, dated June 7, 1905; and a fourth for $700, dated June 7, 1905. To secure the payment of the first three of these notes, he had given mortgages to the bank upon all the land described. When the mortgages were executed, Finch was not the legal owner of the southwest quarter of section 36, but held it under a contract of purchase from the state of Montana. The note for $700 was executed for money borrowed to pay the balance of the purchase price due the state. As additional security for its payment, Finch assigned to the bank his contract of purchase, and on June 10 thereafter a patent was issued by the state directly to the bank. The bank gave Finch a written statement to the effect that it held the title only as security for the payment of his indebtedness. At the time the warranty deed was executed, Finch's indebtedness to the bank amounted to about $5,000. The bank did not then nor thereafter surrender

Finch's notes, nor cancel the mortgages, but retained them intact. Just prior to or about the time of this transaction, Finch and the bank had executed a lease of the land to one Carter, the bank joining because it was the apparent owner of the 160 acres lying in section 36, under the patent. Finch then went to Silver Bow county, and resided there until this action was brought. The bank collected the rent from Carter, and, after paying the taxes on the land and other charges, indorsed credits upon the second and third notes, but kept an account thereof upon its books under the title "C. L. Finch, Rental Ac." At the time the mortgage to secure the first note was executed, Finch was a single man. Before the latter transactions occurred, Finch and his codefendant, Adelene Vian Finch, began to cohabit as husband and wife, and held themselves out as such until the land was leased to Carter. Apparently they separated at that time, and have lived apart ever since. The latter refused to join in the second mortgage and deed to the bank. When the deed was executed by the bank to the deceased, all the notes were transferred to her order without recourse, except the second. As appears by a memorandum written upon it, it had been fully discharged out of the rent received by the bank from Carter. By formal assignments in writing also, the mortgages, together with the notes secured by them, were transferred to the deceased. Each of the assignments authorized her, at her own cost and expense, "to have, use, and take all lawful ways and means for the recovery of said money and interest; and, in case of payment, to discharge the same mortgages as fully as the party of the first part might or could do if these presents were not made." Though the defendant Adelene Vian Finch filed an answer, she did not appear, nor was she represented at the trial.

The issues presented by the pleadings were two, *viz.*: (1) Whether the deed from Finch was intended as a mortgage by way of additional security for the indebtedness due, or was intended by him and accepted by the bank as a conveyance to it of his equity of redemption in full payment and discharge of his indebtedness; and (2) whether the deceased was a *bona fide* purchaser for value. The court found the issues in favor

of the plaintiff. A decree was rendered and entered accordingly. The defendant Chas. L. Finch made his motion for a new trial on the ground, among others, of insufficiency of the evidence to justify the decision. During the pendency of the motion, the term of office of Hon. Lew L. Callaway, the judge who presided at the trial, expired, and the motion was submitted to Hon. W. A. Clark, who granted it. The plaintiff has appealed.

Though defendant's notice of intention receives several of the statutory grounds for a new trial, apparently the only ground urged at the hearing in the district court was the insufficiency of the evidence to justify the findings. We therefore have before us for decision the single question whether Judge Clark [1] erred in granting the motion on that ground. It is argued by counsel for the plaintiff that, while it is the general rule that an order determining a motion for a new trial on the ground of insufficiency of the evidence will not be disturbed if the evidence presents a substantial conflict, this rule has no application to a case in which, as in this, the motion has been submitted to and determined by a judge other than the one who presided at the trial. They say that, inasmuch as Judge Clark, not having seen the witnesses or heard their testimony, was compelled to gain his knowledge of the case from the record alone, he was in no better position to determine the motion than is this court, and hence that his order does not carry with it the presumption usually indulged on appeal in favor of such an order, *viz.:* That the ruling of the trial court will be accepted as conclusive, unless an abuse of discretion is made apparent. It is therefore argued that this court should examine the record and determine the question submitted, without regard to the conclusion arrived at by Judge Clark. The same contention was made in the recent case of *Leveridge* v. *Hennessy,* 48 Mont. 58, 135 Pac. 906, but was not considered or determined, because, as disclosed by the record, there was a decisive preponderance of the evidence in favor of the conclusion reached by the judge who presided at the trial, and hence there was no room for the exercise of discretion by the judge

who ordered a new trial. It was there said: "The question is an interesting one and unsettled in this state, but we do not deem the present case an opportune one for its consideration." The statement that the question is unsettled in this state is not entirely correct. Several decisions heretofore made by this court either directly or in principle support counsel's contention. In the early case of *Orr* v. *Haskell,* 2 Mont. 225, in affirming an order denying a motion for a new trial, the court said: "It must be clear that the jury has erred before a new trial will be granted, on the ground that the verdict is against the weight of the evidence or unsupported by it. And, if this is the rule, as it undoubtedly is, even in the court where the cause is tried, and before whom the witnesses appear and testify, *a fortiori* ought it to be the rule when another court decides the motion for a new trial, with no other knowledge of the facts than is derived through the imperfect medium of a written statement." In *Landsman* v. *Thompson,* 9 Mont. 182, 22 Pac. 1148, after discussing and affirming the rule which ordinarily applies to cases presenting substantially conflicting evidence, the court said: "The rule above cited is based upon the ground that the judge below has heard the oral testimony, has observed the demeanor of witnesses, and had the benefit of living, speaking testimony, which in the supreme court is reduced to a lifeless printed record, for which reason it is presumed that the trial judge was in a better position to exercise a sound discretion than is the appellate court; and, if it does not appear that he has abused such discretion, his action will not be disturbed. In the case at bar, the judge who granted the motion was other than the one who presided at the trial. The court has not therefore the benefit of the judgment of the trial judge, based upon his view of the animate witnesses. We occupy the same point of view as the judge passing upon the motion in this case, as far as the advantage of judging testimony is concerned. This court has, as the judge below had, nothing but printed testimony. Neither has any light, save from the inanimate type, and to that we must refer to decide whether the judge abused a discretion." It then proceeded to examine

the record, and reached a conclusion upholding the ruling of the judge who granted the motion, on the ground that there was no substantial conflict in the evidence.

*Newell* v. *Whitwell,* 16 Mont. 243, 40 Pac. 866, is in principle, also .directly in point. That was an appeal from an order granting a motion to dissolve an attachment based exclusively upon affidavits. Recognizing again the general rule, the court there, through Mr. Justice Hunt, used this language: "It must be remembered that the case is not one where the witnesses testified in person, and where the manner in which they gave their evidence might have materially aided the trial judge in weighing their credibility. For this reason the case must be decided by this court precisely upon what was before the district court; that is, upon record evidence, and nothing else." Upon a consideration of the affidavits, the court reached the conclusion that the evidence preponderated against the conclusion of the trial judge, and reversed the order. Again, in *Wilson* v. *Barbour,* 21 Mont. 176, 53 Pac. 315, the appeal was from an order refusing to dissolve an attachment. The motion had been made upon documentary evidence disclosing a substantial conflict. The court nevertheless proceeded, as it had in *Newell* v. *Whitwell, supra,* to determine the merits of the motion, by deciding it upon the weight of the evidence. In *Bordeaux* v. *Bordeaux,* 43 Mont. 102, 115 Pac. 25, the trial court had improperly excluded from the evidence certain letters exchanged between the plaintiff and the defendant. This court, upon concluding that they ought to have been admitted and considered upon the question whether or not the parties had separated by mutual consent, proceeded to give them such probative value as ought to have been accorded to them by the trial court, and determined the rights of the parties accordingly; and this it did upon the theory that it was in as good position to determine the value of the testimony as the trial court would be if a new trial should be ordered.

While, in determining appeals from orders setting aside or refusing to set aside defaults and the like, this rule has not always been consistently observed, nevertheless there is no sub-

stantial ground upon which the propriety or the soundness of it can be questioned. A trial court should not set aside the verdict of a jury, except for cogent reasons—that is, unless the evidence preponderates against it—for the right of trial by jury is a substantial, constitutional one, which should be respected accordingly. (*Orr* v. *Haskell, supra; Sutton* v. *Lowry,* 39 Mont. 462, 104 Pac. 545.) When the ground of the motion is insufficiency of the evidence, or other ground which appeals to the court's discretion, the verdict should not be disturbed, unless a refusal to do so would be to exceed the bounds of reason, all the circumstances being considered. (*Murray* v. *Buell,* 74 Wis. 14, 41 N. W. 1010; *Root* v. *Bingham,* 26 S. D. 118, 128 N. W. 132.) The term "discretion," as used in this connection, denotes "a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve, and not to impede or defeat, the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates." (*Bailey* v. *Taaffe,* 29 Cal. 423.) See, also, *Jensen* v. *Barbour,* 12 Mont. 566, 31 Pac. 592, where the foregoing definition is approved.

When a motion for a new trial for insufficiency of the evidence is submitted to a judge other than the one who presides at the trial, for the very reason that he cannot call to his aid a recollection of the demeanor of the witnesses, he ought not to go further than to determine upon the dead record the question whether there is a decided preponderance of evidence against the verdict or decision. If such is the case, a new trial ought to be granted; otherwise not. On appeal this court will examine the record and determine whether the motion was properly determined. Such is the rule, as was recognized in *Orr* v. *Haskell,* and applied in *Landsman* v. *Thompson, supra.* There is perhaps a limitation of the rule as thus broadly stated, *viz.,* that an order granting a new trial will not be set aside so readily as an order denying one; the reason being that the latter ends the case, so far as the trial court is concerned, whereas the former does not, but merely restores the parties to the same condition

in which they were before the trial. Since the enactment of section 6253 of the Revised Codes, on appeals in equity cases, this court has observed the rule: The findings of the trial court will not be set aside unless there is a decided preponderance in the evidence against them; and, when the evidence as it appears in the record, fully considered, furnishes reasonable grounds for different conclusions, the findings will not be disturbed. (*Bordeaux* v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918; *Watkins* v. *Watkins*, 39 Mont. 367, 102 Pac. 860; *Copper Mt. Min. Co.* v. *Butte & C. C. & S. Co.*, 39 Mont. 487, 133 Am. St. Rep. 595, 104 Pac. 540; *Reid* v. *Hennessy Merc. Co.*, 45 Mont. 383, 123 Pac. 397; *Leveridge* v. *Hennessy, supra*). In the last case an order granting a new trial, made by a judge other than the trial judge, was reversed as already noted.

Since this case came before Judge Clark upon the same record as that before us, there can be no sound reason why he should not have been governed, in his review of it, by the rule observed by this court on appeal, and the propriety of his action be determined accordingly. The same presumption may not attach to his ruling as would attach if he had heard and observed the living witnesses. "Where the reason is the same the rule should be the same"; but "when the reason of a rule ceases so should the rule itself." (Rev. Codes, secs. 6179, 6178.)

As we view the evidence, the vital question in the case is whether the deed to the bank was intended as additional security for Finch's indebtedness to the bank, or as a final discharge of it; for there is no evidence to justify a finding that the deceased purchased without notice of Finch's claim. Though she [2] paid full value, she accepted a quitclaim deed. This conveyed to her only such title as the bank had. (*Wetzstein* v. *Largey*, 27 Mont. 212, 70 Pac. 717.) But, aside from this, the evidence shows affirmatively that, before the purchase was consummated, one Truesdale, who acted as agent for the deceased and conducted the negotiations for her, interviewed Finch, ostensibly to ascertain whether he asserted any claim to the land. In that interview Finch told Truesdale, in substance, that he owned the

land subject to the mortgages held by the bank. He testified that he told Truesdale all the facts showing the relations of the bank to the title, including the fact that, though he had executed a deed to the bank, he held the title in his own name. Truesdale denied that he was informed by Finch of the existence of the deed; but the fact remains undisputed that he was informed of Finch's claim and the nature of it, and that he communicated this information to the deceased. Furthermore, soon after the purchase was consummated, the deceased instituted this action. The original complaint was for a formal foreclosure of the assigned mortgages. In the first count therein, which declared on the older mortgage, it was alleged: "That the condition of the said mortgage has been broken, in that the defendant Charles L. Finch has wholly failed to pay the said note or the interest on said note secured by said mortgage, and the said defendant is thereby indebted to plaintiff on said note and mortgage in the sum of $4,413.50, with interest thereon at the rate of one per cent per month from the 21st day of January, 1911." A like allegation is found in the second count. In the third count recovery was sought for the amount of the fourth note, together with $87.25, advanced by the bank for the payment of taxes for the years 1905 and 1906, with interest thereon, with a foreclosure of Finch's equity in the portion of the land covered by the patent. The verification was by the deceased upon her personal knowledge. The prayer demanded not only a personal judgment against Finch, but a deficiency judgment in case the amount due should not be fully satisfied by the sale of the property. Taking all these facts together, it is impossible to reach any other conclusion than that the deceased had full knowledge, not only of the claim of Finch, but also of its nature. It cannot be conceived that one who believes he holds title to property free from encumbrances or outstanding equities, can fall into such a mistake as to his rights as did the deceased when she filed the original complaint. And the presumption against her claim is strengthened by the fact that the record does not disclose any explanation as to why she brought the action as she did. Of course, if her claim, as now made, were well founded, it would

be wholly unnecessary to inquire what were the relations between Finch and the bank. She would come within the protection of the statute. (Rev. Codes, sec. 5750.) As the case stands, she falls clearly within its exception.

The evidence on the main issue is not altogether free from doubt, but, viewed as a whole, we think it preponderates decisively against the finding of the trial court. The evidence [3] tending directly or indirectly to sustain Finch's claim may be summarized as follows: The relations of Finch to the bank had their inception in the several loan transactions referred to in the statement. He testified that, about the time he executed the note, he had come to the conclusion that he had not been successful in his farming operations, and for this reason it would be better to lease the land and allow the rentals to be paid to the bank to be applied, first, to the payment of taxes and other charges, and then to the discharge of his indebtedness. He was then solicited by the officers of the bank to execute the deed, the claim being that this would be a better security than the mortgages, and would leave Finch in a better position to follow some profitable pursuit elsewhere. He agreed to do this upon the condition that the bank would give him a written defeasance. This, Mr. Gohn, the cashier of the bank, and who acted for it, agreed to do. Though the deed was executed and delivered, the defeasance was not. Finch did not insist upon having it, because, as he says, he trusted Mr. Gohn's assurances, when he subsequently demanded it, that the bank would not take any advantage of him. The understanding was that, apart from the change in the form of the security, the relation of mortgagor and mortgagee between himself and the bank would remain unchanged, he being at liberty at any time to discharge the indebtedness and redeem the land, or sell it to any purchaser he might find. The bank kept the notes uncanceled, collected the rents, paid the taxes, and credited the balance upon the indebtedness, keeping an account under the title "C. L. Finch, Rental Ac." When the transfer was made to the deceased, with the notes and mortgages, the notes, except the smaller one, showed, by memoranda attached, the amount of principal and interest due to

December 31, 1910. The memorandum attached to the oldest note contained the notation: ''Secured by first mortgage.'' The second note had attached to it a similar memorandum, reciting: ''This note is secured by mortgage sent you for $1,772.25, which mortgage also secures a note for $145.00 of Finch and Stafford, which note has been paid, out of rental account; hence the note No. 587, $1,627.25, is the only one to be considered in connection with this mortgage.'' The small note bore upon its face the notation: ''Pd. 12—30—1910''—and a memorandum attached recited: ''This note credited and charged Finch Rental Ac. Dec. 29 (30) 1910.'' There are other similar circumstances disclosed by the books of the bank which, taken with the foregoing recitals, point strongly to the conclusion that the transactions between it and Finch were never regarded as having been merged in a settlement and discharge of Finch, but that he was regarded all the while by the bank as still its debtor. This conclusion is fortified indirectly by the fact that on February 8, 1911, within a month from the date of the transfer to her, the deceased instituted this action to foreclose the mortgages. This fact furnishes a presumption that she regarded herself, upon the information received from the bank, as being substituted in its place as mortgagee. It is further indirectly fortified by the fact that, while the officers of the bank who conducted the transaction with Finch must be presumed to have been men of experience and business capacity, and knew the rights of the bank, they, nevertheless, just prior to the transfer to deceased, had employed an attorney to bring an action for the foreclosure of the mortgages. Added to these circumstances is the fact that, at the time the deed was executed to the bank, no consideration was paid for it to Finch, either in the form of direct payment or by a credit upon his indebtedness to the bank. On the other hand, Mr. Gohn, the cashier, and Mr. Smith, the accountant of the bank, who overheard a part of the negotiations, both testified that Finch executed the deed in order to discharge his indebtedness to the bank, and to avoid the expense of foreclosure, without any reservation except to exact a promise from Mr. Gohn that the bank would not sell the land to the defendant Adelene Vian Finch, the reason being

that, though Finch had theretofore cohabited with her and held her out as his wife, she was not, in fact, such, and for this reason, and because of his enmity toward her, growing out of their separation, he did not desire her to acquire the property. Both testified that this promise was made in writing, but that the writing was not signed. As to why the bank retained the notes and mortgages, both explained that the purpose was to enable the bank to foreclose the mortgages and thus forestall any claim to dower in the land by Adelene Vian Finch, in the event she appeared to be Finch's lawful wife; she having refused to join in the deed. This explanation, if true and accepted as satisfactory, so far as concerns the first mortgage, because at the time of its execution Finch was admittedly a single man, does not explain the retention of the second mortgage and the notes secured by it. After Finch removed his residence to Silver Bow County, he did not again visit the bank, nor did he make any inquiry of it as to the condition of his indebtedness to it. Mr. Smith explained that the account of the bank was kept as it was in order that the actual cost of the land to the bank might at any time be ascertainable. Neither he nor Mr. Gohn offered any explanation of the fact that credits were indorsed on the notes, and that they were otherwise treated as if they represented continuing liabilities against Finch. Both explained that they were transferred to the deceased in order that she might use them to cut off the possible claim by Adelene Vian Finch. But that deceased did not so understand the transaction is clear, because, as above stated, in her original complaint she sought to charge Finch personally for the amount of the notes, and sought a deficiency judgment for any balance of the amount not satisfied by a sale of the land. There was some evidence as to the value of the land both at the time the deed was executed and at the time of the trial. At the date of Finch's deed, its value was not largely in excess of the amount of his indebtedness; at the date of the trial its value had greatly increased. On the whole, while it must be admitted that Finch's conduct subsequent to the execution of his deed is not altogether consistent with his testimony given at the trial, it is impossible to harmonize the

admitted facts, as shown by the records of the bank and the conduct of its officers, with any other theory than that Finch's deed was not intended by him, nor accepted by the bank, as a conveyance of the title in payment of his indebtedness, but was intended and accepted as an additional security. The conclusion cannot be avoided that the bank retained the notes, not for the purpose stated, but as representing continuing liabilities; otherwise the giving of the deed operated as a discharge of them, as well as the mortgages themselves, and none of them could thereafter be made the basis of legal proceedings for any purpose. Judgments could not be secured upon the notes as against Adelene Vian Finch, because she had not signed them. Having been paid, they represented no valid claim against Finch.

The rule applicable to this class of cases is stated by Mr. Devlin in his work on Deeds, as follows: "If the indebtedness remains uncanceled, the conveyance (absolute deed) is treated in [4] equity as a mortgage, though the grantee may not regard it as such; but he cannot hold the absolute title without at the same time relinquishing the right to compel payment on the deed." (2 Devlin on Deeds, sec. 1120; see, also, *Marshall* v. *Thompson*, 39 Minn. 137, 39 N. W. 309; *Simpson* v. *First Nat. Bank*, 93 Fed. 309, 35 C. C. A. 306; *Harmon* v. *Grant's Pass Banking etc. Co.*, 60 Or. 69, 118 Pac. 188; *Sutphen* v. *Cushman*, 35 Ill. 186; 2 Jones on Mortgages, 325; 27 Cyc. 1011, 1012.) [5] The burden is upon him who alleges that a deed absolute on its face is a mortgage to establish the fact by clear and convincing evidence. (*Gassert* v. *Bogk*, 7 Mont. 585, 1 L. R. A. 240, 19 Pac. 281.) Yet this burden is, we think, fully sustained when it is made to appear that the debt secured remains uncanceled, and is treated as an existing indebtedness, and the relations of the parties remain unchanged after the delivery of the [6] deed. If it appears that the antecedent debt has been canceled, or it is agreed upon the execution of the deed that this is to be done, the retention of the evidence of the debt by the mortgagee is subject to explanation. (*Larson* v. *Dutiel*, 14 S. D. 476, 85 N. W. 1006; *Harmon* v. *Banking Co., supra*.) When, however, the mortgage indebtedness is left uncanceled, and is held

by the mortgagee as a liability against the mortgagor, and proceedings are instituted to enforce it, no explanation can suffice to forestall the conclusion that the relation between the parties of mortgagor and mortgagee theretofore established remains unchanged.    Whether the debt has been discharged is one of the crucial tests by which the rights of the parties are to be determined.    (*Harmon* v. *Banking Co.* and *Sutphen* v. *Cushman, supra.*)

The order is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.