ALICE LEHNEN, *Appellee*, v. E. J. HINES & COMPANY, a Copartnership, etc., *Appellants*.

No. 17,707.

SYLLABUS BY THE COURT.

1. TRIAL—*Special Questions for Jury—When Request Should Be Made.* It is competent for a court to make reasonable rules regulating the time within which parties desiring the submission of special interrogatories shall present them to the court. Ordinarily they should be presented early enough to enable the court to revise and the opposing party to examine them before the jury is charged or the argument by counsel is begun, and under the circumstances of the present case it is held that the refusal of the court to submit the special interrogatories when they were requested was not an abuse of discretion or prejudicial error.

2. HOTEL—*Guests—Responsibility of Proprietor.* Where a person is received in a hotel as a guest the law implies a contract between the proprietor and the guest that the proprietor, by himself and his servants and agents, will exercise reasonable care for the safety, convenience and comfort of the guest, and that the guest on his part will observe the recognized proprieties of life and refrain from any boisterous or other conduct offensive to other guests or which would bring the hotel into disrepute.

3. —— *Same.* A hotel keeper is responsible to a guest for the acts of his servants in charge of a hotel whether the particular acts were expressly authorized or not, providing the servant was acting in behalf of the proprietor at the time and within the general scope of his employment.

4. HOTEL PROPRIETOR—*Responsible for Acts of Night Clerk.* A night clerk left in charge of a hotel, with authority to receive guests, assign them to rooms, preserve order, and generally look after the hotel during the night, has the implied authority to eject guests from their rooms in order to preserve peace and order; and if the clerk undertakes to eject a guest from his or her room, and uses force and violent language, and summons the police, and directs the police to make an arrest and place the guest in jail, such action on the part of the night clerk will be held in law to be the act of the employer of such clerk, or the proprietor of the hotel, and for the right or wrong of which the hotel proprietor must be held responsible.

5. DAMAGES—*Misconduct of Hotel Clerk—Not Excessive.* Under the circumstances of the case it can not be held that an award of $4000 as damages is so excessive as to indicate passion or prejudice of the jury.

Appeal from Montgomery district court. Opinion filed November 9, 1912. Affirmed.

*A. B. Clark,* and *S. H. Piper,* both of Independence, and *Chas. D. Welch,* of Coffeyville, for the appellants.

*W. H. Sproul,* of Sedan, *W. N. Banks,* of Independence, and *Monroe, Roark & Taylor,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by the appellee, Alice Lehnen, against the appellants, E. J. Hines & Company, to recover damages for injuries sustained by her while she was a guest at the Mecca, the appellants' hotel, at Coffeyville, Kan. She alleged and offered proof tending to show that she came as a guest to appellants' hotel on the evening of August 27, 1910, when she registered and was assigned to a room which she and her companion, Miss Edna Smith, occupied, and that at about two or three o'clock on the following morning, when she and her companion were asleep in the room, a knock was heard at her door, and upon arising she found Atwood, the clerk then in charge of the hotel, there asking to be admitted to the room, and that when admission was refused he forced the opening of the door and entered the room in an intoxicated condition, and that when she tried to reach the manager of the hotel by telephone to report the intrusion he became angry and called a policeman to arrest the appellee and to eject her from the hotel, that she protested and declined to leave the hotel and insisted on finding the manager and invoking protection from him; that Atwood called appellee vile names, and when she refused to leave the hotel struck her several blows

on the face and knocked her against the wall. There were averments to the effect that she and Miss Smith were arrested in their night clothes, and that Atwood and the officer undertook to take them out of the hotel before they were dressed, and that when appellee insisted on dressing the officer refused to step outside of the room and remained there while they dressed themselves. During the controversy appellee says she went to the manager's room and reported the invasion of her room and asked for protection, but that he did not respond for some time, and when he came to her room he declined to interfere in their behalf and directed the officer to take them out of the hotel to the jail. They were taken to the jail, which it is claimed was in an unsanitary condition, and incarcerated with negro women, where they were held for a day or more before they could secure a release. She alleged that as a consequence of the ill treatment and injuries she suffered damages in the sum of $10,000. The appellants alleged and claimed that the appellee and her companion were drinking intoxicating liquors and smoking cigarettes in the room and were making a boisterous noise likely to disturb the other guests of the hotel, and that Atwood, without authority from the appellants, undertook to quiet her, and failing to accomplish it called a policeman who on his own responsibility arrested the parties and placed them in jail. At the trial she recovered a judgment of $4000 against appellants, from which they appeal and assign numerous errors.

Although there is complaint that the allegations of the petition are indefinite, and also of the refusal of the court to grant a continuance of the case when it was amended two days before the trial by changing the name of the plaintiff from Alice Burles to Alice Lehnen, we find nothing substantial in either objection. The petition was sufficiently definite and the amendment as to the name was not so material as to require a continuance of the cause. The limitation on the cross-

examination of appellee of which complaint is made
is not a good ground for reversal of the judgment.

There may be some ground for complaint of the
testimony of what happened at the Carl-Leon Hotel in
Independence, but it appears that the greater part of
it was finally stricken out by the court. Appellee and
Miss Smith first went to the Carl-Leon Hotel, conducted
by appellants at Independence, and in the course of
the trial appellee was permitted to testify that after
going to her room in that hotel a porter came into the
room and inquired if they had noticed the white-haired
gentleman in the lobby when they entered the hotel.
Appellee replied that she had not and asked the reason
for the inquiry. The porter replied that the person
referred to was the proprietor of the hotel and was
quite a ladies' man and had his eyes on appellee and
Miss Smith. Appellee stated that this inquiry gave
her offense and she paid their bill and left the hotel,
going to the Mecca at Coffeyville. In reply to a ques-
tion whether Mr. Hines had not tried to induce them
to return to the Carl-Leon that night she stated that
Mr. Hines did not but his clerk did follow them to the
station and asked them to come back, saying that Mr.
Hines would not harm them. Some of the challenged
testimony was received without objection and the only
objection to a part of it was that it was hearsay, but
in the end the principal part of it was stricken out by
the court. Under the circumstances the rulings are
not deemed to be material errors and only such errors
warrant a reversal.

Error was assigned on the refusal of the court to
submit fifty-two special questions which appellants re-
quested and which the court refused because the request
came too late. There is a rule in force in that district,
with which counsel was familiar, which provides that
parties who desire the submission of special questions
to the jury shall present them to the court as soon as
the testimony is concluded. In this case the testimony

was concluded at six o'clock on a certain day, and the judge then announced a meeting with counsel at eight P. M. of that day when he would submit to counsel for the parties the instructions he proposed to give to the jury. At that hour counsel met with the judge and the proposed instructions were examined and discussed, and certain modifications were suggested which the court took under advisement until the following morning. There was no request for the submission of special questions during this time, nor even when the court convened at nine o'clock the next morning. At the convening of court rulings were made on requests for and objections to proposed instructions and then the charge was read to the jury. After the court had instructed the jury and counsel were about to proceed with their argument appellants requested the submission of special questions of fact in writing, but the court refused to stop the proceedings for that purpose, holding that the request had not been made in good time.

It is competent for courts to make and enforce reasonable rules regulating the practice in cases pending before them. The rules must, of course, harmonize with statutory provisions, and the times fixed by statute within which steps are to be taken can not be shortened by rules. The statute (Civ. Code, § 294) does not expressly provide when the request for special findings shall be made, and in the absence of such provision a rule is not unreasonable which requires those desiring special findings to make application for them before the argument is begun. In *Wilcox v. Byington,* 36 Kan. 212, 12 Pac. 826, a case tried without a jury, it was said that the general practice in that class of cases was to request findings just before or at the close of the argument. In *Schuler v. Collins,* 63 Kan. 372, 65 Pac. 662, it was held:

"The district courts have authority to make necessary and reasonable rules governing the transaction of business therein, and a rule requiring that parties who

desire the court to state in writing its findings of fact, separately from its conclusions of law, shall request the same at the commencement of the trial is not unreasonable or illegal." (Syl. ¶ 4.)

In the recent case of *Marquis v. Ireland,* 86 Kan. 416, 121 Pac. 486, which was tried by the court alone, it was said:

"It would seem that in fairness to the trial court the request ought to be made before the argument is begun, and indeed before the evidence is introduced, in order that attention may be given to this aspect of the matter as the evidence goes in." (p. 419.)

It is quite important, it would seem, that the special interrogatories should be presented early enough so that the court might have the opportunity to revise and the opposing party to examine them before the jury is charged or the argument by counsel is begun. Some of the questions submitted were important and might well have been submitted even at that late time, but that was a matter within the discretion of the court and its refusal to stop the proceedings at the time the request was made and enter upon the task of revising fifty-two special questions, thus unnecessarily delaying the trial, can not be regarded as an abuse of discretion.

The principal dispute between the parties is in regard to the duty of innkeepers towards their guests and their liability for the willful misconduct of their servants. These questions are raised by the demurrer to the petition of appellee and also by the rulings of the court in instructing the jury. It is insisted that the action of Atwood, the clerk of the hotel, in entering the room of appellee and in assaulting her was not taken in the performance of any duty which he owed to appellants, and that appellants can not be held as insurers of the safety of their guests as against the willful acts of Atwood who they claim was acting for himself alone and to serve his own purposes. It is conceded that appellants were proprietors of the

hotel, that appellee was registered there as a guest and had been assigned to the room which she occupied, that Atwood was left in charge of the hotel on the night in question, and that among other things he was authorized to "room guests" and keep order. It was well established by the evidence that while clothed with this authority he entered appellee's room, charged her with being disorderly and unworthy of hospitality, called her vile names, ordered her to leave the hotel, and that when she refused to leave he assaulted her, beat her, and then caused her to be arrested and taken to jail. Appellants insist, however, that by the instructions they were virtually held to be insurers of the safety of the guest against the assault and willful misconduct of their servant while acting outside the scope of his employment. It is evident that the court did not try the case upon that theory. In defining the duty of a hotel keeper the court in effect instructed the jury that when a person is received in a hotel as a guest the law implies a contract between the proprietor and the guest that the proprietor, by himself and through his servants and agents, will exercise reasonable care for the safety and comfort of the guest, and that the guest on her part will act in a proper manner and refrain from any boisterous conduct and from doing anything calculated to disturb other guests.

Speaking of the implied obligation of the hotel keeper to protect guests against third persons as well as against the wrongs of servants it has been said, in Beale on Innkeepers and Hotels, § 172, that an injury inflicted by a servant negligently or intentionally is a breach of the duty of the hotel keeper, and it is added that:

"The innkeeper's duty, the breach of which by his servant causes injury, is not the negative duty not to assault the guest, but the affirmative duty to protect him from assault. The servant, in assaulting the guest, is committing the tort himself; but he is breaking the obligation of protection which rests on the inn-

keeper, and which the servant has himself been employed to carry out."

The jury were likewise advised that when a guest is assigned to a room for her exclusive use it is hers for all proper purposes until she surrenders it, except that the proprietor and his servants shall have access to and may enter it at all reasonable times in order to keep the house in condition and so that he may perform his implied obligation to minister to the convenience and comfort of the guest. The jury were instructed, too, that under the contract "The guest has a right to insist upon respectful and decent treatment at the hands of the hotel keeper and his servants and employees; and this implies the obligation on the part of the hotel keeper and his servants and employees that they will not abuse or insult the guests, or indulge in any conduct or speech that may unnecessarily bring upon the guest physical discomfort, distress of mind, or imperil the guest's safety."

Special complaint is made of instruction No. 10, which, it is contended, leaves out of consideration the element of whether the clerk was acting within the scope of his employment. It reads:

"You are instructed that if you find and believe from the evidence in the case that the plaintiff on the night in question, while a guest of the hotel, was assaulted by the clerk, and beaten, and was by him or by defendants' manager, or by both such clerk and manager, wrongfully caused to be arrested and forcibly taken from said hotel by the police officers, and placed in jail, it would be your duty in that case to find for the plaintiff, and assess her damages at such sum as will, in your judgment, under all the evidence, fairly compensate her for the physical pain and mental suffering directly and proximately due to such treatment."

This instruction, however, is only a part of a lengthy charge, and is to be considered in connection with others that were given and in which the liability of

appellants was made to depend upon the qualification that the servant was acting within the scope of his employment.

In the first part of the sixth instruction it was said:

"A hotel keeper is responsible to a guest for the acts of his servants in charge of the hotel, whether such acts were expressly authorized by the proprietor or not; or even if he forbade and disapproved them, providing that the servant and employee was acting within his duties as such servant or employee."

The court then defined the duty of the clerk who was left in charge of the hotel, using the following language:

"A night clerk left in charge of a hotel with authority to receive guests, assign them to rooms, preserve order, and generally look after the hotel during the night, has the implied authority to eject guests from their rooms in order to preserve peace and order; and if the clerk undertakes to eject a guest from his or her room, and uses force, and violent language, and summons the police, and directs the police to make an arrest, and place the guest in jail, such action on the part of the night clerk will be held in law to be the act of the employer of such clerk, or the proprietor of the hotel, and for the right or wrong of which the hotel proprietor must be held responsible."

This is a correct statement of the rule as applied to a case where a hotel is left in charge of the clerk vested with the authority which it is conceded Atwood had. When he entered the room and undertook to eject appellee he was acting for the proprietors and within the apparent scope of his authority. To make the appellants responsible for Atwood's actions it is not necessary that they should have expressly authorized him to do the particular acts of which complaint is made. It is enough that they entrusted him with authority to manage the business and that he was acting for them in respect to the business in which he was engaged when the wrong was committed. They can not be excused from liability because Atwood while

conducting the business abused his authority or even
disobeyed the express directions which they had given
him. They placed him in authority as to the assign-
ment and occupancy of the rooms and as to main-
tenance of order by the guests in the rooms, and they
can not escape liability where in exercising his au-
thority he may have deviated from instructions and
because of a loss of temper or lack of sense and dis-
cretion he inflicted an unjustifiable injury upon a
guest.

It is argued that *Crelly v. Telephone Co.*, 84 Kan.
19, 113 Pac. 386, is an authority against the rule ap-
plied in this case. There the one who committed the
assault was acting outside the scope of his employ-
ment and the assault did not grow out of the service
he was employed to perform. In that case it was said:

"The general rule is that the master is responsible
for the acts of his servants done in the execution of
the master's business and within the scope of his em-
ployment. It is not enough to exempt the master that
the act is willful or malicious or in excess of the au-
thority expressly conferred. If the tortious act is
done while the servant is acting in behalf of his master
and within the scope of his employment the master
will be responsible, although the act may be willful
and wanton." (p. 21.)

The parties have debated at considerable length
whether hotel keepers are responsible to the extent
that common carriers of passengers are for the in-
juries inflicted by their servants while not engaged in
rendering any service to the hotel keeper and while
acting outside the scope of their employment. *Clancy
v. Barker*, 71 Neb. 83, 98 N. W. 440, 103 N. W. 446,
is an example of the cases placing hotel keepers and
common carriers on the same level of liability, while
*Clancy v. Barker*, 131 Fed. 161, 66 C. C. A. 469, 69
L. R. A. 653, is an example of those holding to the
opposite theory. It is unnecessary to determine that
question in this case as the clerk was engaged in doing

the proprietors' business when the wrongs complained of were done, and this is so manifest that nice distinctions need not be drawn in fixing the line where the proprietors' liability for Atwood's acts begins and ends. Indeed, it is stated in appellants' answer that Atwood was acting as night clerk and that one of his duties was to attend to the calls and wants of guests, and that in response to a call he went to appellee's room to ascertain her wants and found her under the influence of intoxicating liquors, making a loud and boisterous noise likely to disturb the other guests of the hotel. The wrongs were committed while Atwood was performing this duty and attending to his masters' business.

There may be assaults upon a guest by outsiders without responsibility by the proprietor, and it may also be that the duties of some servants may be such as that an assault by one of them upon a guest might not subject the proprietor to liability, but certainly he can not be regarded as exempt from liability where the assault is committed by a night clerk left in charge of the hotel and its guests. As was said in *DeWolf v. Ford,* 193 N. Y. 397, 86 N. E. 527:

"There may doubtless be many conditions under which a guest at an inn may be assaulted or insulted by another guest or by an outsider without subjecting the innkeeper to liability, but if it ever was thought to be the law that an innkeeper and his servants have the right to willfully assault, abuse or maltreat a guest, we think the time has arrived when it may very properly and safely be changed to accord with a more modern conception of the relation of innkeeper and guest." (p. 406.)

There was, as has been stated, a charge that appellee was a woman addicted to the use of intoxicating liquors and cigarettes, and that she was under the influence of intoxicating liquors and cigarettes on the night of the assault and was acting in a way that would be offensive to other guests, but this charge has

been negatived by the verdict of the jury. It was competent, of course, for the hotel keeper to enforce rules for the maintenance of order within the hotel, and if appellee was guilty of misconduct which was offensive to other guests or would bring the hotel into disrepute he could cause the removal of the guest, using only such means and force as was reasonably necessary to accomplish the purpose.

It was not improper to submit to the jury the matter of the arrest and imprisonment of appellee caused by Atwood and which appears to have had the sanction of St. Clair, the manager of the hotel. In *Wheeler & Wilson Mfg. Co. v. Boyce,* 36 Kan. 350, 13 Pac. 609, the company was held liable for the acts of its agent in causing the arrest and detention of another, done in the execution of the company's business. In *A. T. & S. F. Rld. Co. v. Henry,* 55 Kan. 715, 41 Pac. 952, it was expressly ruled that a railroad company carrying passengers was liable for the illegal arrest and imprisonment of a passenger caused by the conductor in charge of the train while acting in the line of his employment.

There is a claim, too, that the award of $4000 as damages is excessive, but the view taken by the jury as to the behavior and standing of appellee and considering the brutal manner in which she was treated we can not say that the award is so excessive as to indicate passion or prejudice of the jury.

Finding no material error the judgment of the district court is affirmed.