JONES, RESPONDENT, *v.* SHANNON ET AL., APPELLANTS.

(No. 3,931.)

(Submitted September 14, 1918. Decided October 24, 1918.)

[175 Pac. 882.]

*Innkeepers—Rights of Guests—Ejection—Compensatory and Exemplary Damages—Malice—Principal and Agent—Judgments—Evidence—Res Gestae—Excessive Verdicts.*

Innkeepers—Rights of Guest—Use of Room.

1.　A guest at a public house is entitled to the exclusive use of the room to which he is assigned, subject to the right of the proprietor as well as his servants and agents, to have access to it when necessary to the proper and reasonable discharge of their duties at such times and in such manner as consistent with the rights of the guest.

Same—Rights of Proprietor—Ejection of Guest.

2.　In the exercise of his duty to see that a guest does not so conduct himself as to be a source of annoyance and discomfort to other guests, the proprietor of a public house may, if he finds it necessary to perform his duty in that regard, enter the room occupied by such guest and eject him therefrom and from the house, provided he uses no more force than is necessary.

Same—Ejection of Guest—Compensatory and Exemplary Damages.

3.　A hotel proprietor who wrongfully forces an entry into the room of a guest and without just cause ejects him from it and the house is liable not only for compensatory but also exemplary damages, if the ejection is accompanied by circumstances indicating that it was prompted by malice, fraud or a spirit of oppression.

Same — Ejection of Guest — Compensatory Damages — Evidence — Sufficiency.

4.　Evidence *held* sufficient to justify a verdict for compensatory damages against defendant innkeeper for wrongfully ejecting plaintiff from her room in the early hours of the morning, under a charge that she was conducting herself in a disorderly manner.

[Who are innkeepers and who are their guests, and for what the former are liable to the latter, see note in 7 **Am. Dec.** 449; and see note in 105 **Am. St. Rep.** 932.]

New Trial—Review—Discretion.

5.　In no case will the conclusion of the district court in disposing of a motion for a new trial be revised on appeal, except for manifest abuse of its discretion.

Same—Disposition of Motion by New Judge—Effect.

6.　Where a motion for a new trial is disposed of by a judge other than the one who presided at the trial, the question on appeal is not whether the judge was guilty of abuse of his discretion in denying it, but whether the evidence as presented in the printed record preponderates decisively against the verdict.

On liability of innkeeper for ejection of guest, see note in 42 **L. R. A.** (n. s.) 830.

Principal and Agent—Torts—Liability.

    7. A principal is liable in damages for wrongs done by his agent while in the discharge of the duties intrusted to him by the principal, even though the latter is ignorant of the wrongs.

Innkeepers—Ejection of Guest—Malice—Exemplary Damages.

    8. Where a guest at a hotel was wrongfully ejected from her room át night without just reason or excuse by the owner's wife, who further exacted payment of an unlawful demand before permitting the guest to leave the house, the jury were justified in the conclusion that the ejection was prompted by malice warranting a finding for exemplary damages.

Same—Ejection of Guest—Malice of Agent—Liability of Principal.

    9. *Held,* under the rule that a principal is not accountable for the malignant motives of his agent unless he authorized the act for which recovery is sought, participated in its commission or subsequently ratified it, that a hotel-keeper who was not present, took no part in nor subsequently ratified his wife's wrongful act in ejecting a guest from the house, was not liable in exemplary damages, since the malice of his wife was not imputable to him.

Same—Malice of Agent—Ratification by Principal.

    10. Unless the principal has knowledge of the circumstances attending a malicious act of his agent, there can be no such ratification of the act as will subject the principal to the imputation of malice.

Judgments—Codefendants—Separate Judgment Against One.

    11. In a tort action against several defendants, judgment may be rendered allowing recovery against all jointly for compensatory damages, and for exemplary damages against one only.

Evidence—Res Gestae.

    12. In an action for wrongful ejection from a hotel, evidence of what occurred in the lobby after plaintiff and her husband started to leave the place was admissible as part of the *res gestae.*

Innkeepers—Ejection of Guest—Excessive Verdict.

    13. *Held,* that a verdict of $500 against a hotel-keeper and his wife jointly as compensatory damages for wrongfully ejecting plaintiff from her room and the house at night, and $250 against the wife as exemplary damages, was not excessive.

*Appeal from District Court, Valley County; Frank N. Utter, Judge.*

Action by Ruth Jones against W. F. Shannon and wife. Judgment for plaintiff. Defendants appeal from an order denying them a new trial. Affirmed as to Lila Shannon and remanded as to W. F. Shannon on condition.

*Messrs. Slattery & Kline* and *Messrs. Freeman & Thelen,* for Appellants, submitted a brief; *Mr. Jas. M. Freeman* argued the cause orally.

*Messrs. Norris, Hurd & McKellar,* for Respondent, submitted a brief; *Mr. E. L. Norris* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendants, W. F. and Lila Shannon, are husband and wife. The husband owns and conducts a public inn or hotel at Glasgow, in Valley county, known as the Shannon Hotel, the wife giving her assistance by acting as housekeeper and exercising a general supervision over the guests and their entertainment, her husband giving her authority to do so. On the evening of November 10, 1913, the plaintiff was a guest of the hotel, intending to spend the night there. She and her husband, Roy Jones, were assigned to a room and were occupying and using it. After narrating the foregoing facts, the complaint charges:

"IV. That said plaintiff, while so occupying the room so assigned her by the said defendants, at about the hour of 1 o'clock in the night of November 10, 1913, retired, and thereafter the said defendant Lila Shannon willfully, wrongfully, forcibly and maliciously entered the said room, so assigned as aforesaid, of this plaintiff, and then and there abused and insulted this plaintiff, applying to her vile and indecent epithets, and charged the said plaintiff with improper and disorderly conduct, and wrongfully, maliciously and without any cause therefor required, demanded and compelled said plaintiff to arise from the bed in said room to which she had retired, and dress, and wrongfully, forcibly, maliciously and without any cause therefor ousted and ejected said plaintiff from said hotel."

It then alleges that by being ejected from the hotel and thus compelled to find lodging elsewhere late at night, the plaintiff suffered great inconvenience and humiliation, and great mental anguish and bodily pain, to her damage in the sum of $5,000.

The answer, by direct and argumentative denials, puts in issue every allegation of the complaint, except that the defend-

ant W. F. Shannon was the owner and proprietor of the Shannon Hotel, and that plaintiff was a guest there at the time alleged.

The trial resulted in a verdict against the defendants jointly for $500 compensatory, and against each of them for $250 exemplary, damages, and judgment was entered accordingly. The defendants have appealed from an order denying them a new trial.

It is contended by counsel that the court erred in denying the motion for a new trial, because the evidence is insufficient to justify a verdict for either compensatory or exemplary damages.

When a person has been received as a guest at a public house, [1] he is entitled to the exclusive use of the room to which he is assigned, subject to the right of the proprietor, as well as his servants and agents, to have access to it when necessary to the proper and reasonable discharge of their duties. These entries must be at such times and in such manner as are consistent with the rights of the guest. (*De Wolf* v. *Ford,* 193 N. Y. 397, 127 Am. St. Rep. 969, 21 L. R. A. (n. s.) 860, 86 N. E. 527; *Lehnen* v. *Hines,* 88 Kan. 58, 42 L. R. A. (n. s.) 830, 127 Pac. 612; 14 R. C. L. 505.) As it is the duty of the [2] proprietor to give reasonable attention to the comfort of his guests, so it is his right as well as his duty to see that a particular guest does not so conduct himself as to be a source of annoyance and discomfort to the other guests. This implies the duty to require the guest to refrain from annoying or offensive conduct, and, if it becomes necessary to perform this duty, the proprietor may enter the room occupied by such a guest and eject him therefrom and from the house, provided, however, he uses no more force than is necessary. (*Lehnen* v. *Hines, supra; McHugh* v. *Schlosser,* 159 Pa. 480, 39 Am. St. Rep. 699, 23 L. R. A. 574, 28 Atl. 291; *Holden* v. *Carraher,* 195 Mass. 392, 11 Ann. Cas. 724, 81 N. E. 261.) If, therefore, the proprietor himself, or by his servant or agent, trespasses upon [3] the rights of the guest, by forcing an entry into his room

and ejecting him therefrom and from the house without just cause, he is liable to the guest for compensatory damages. The recovery may also include exemplary damages, if the ejection is accompanied by circumstances indicating that it was prompted by malice, fraud or a spirit of oppression. (*McCarthy* v. *Niskern,* 22 Minn. 90; *Malin* v. *McCutcheon,* 33 Tex. Civ. App. 387, 76 S. W. 586; Rev. Codes, sec. 6047.)

As to compensatory damages: At about 6 o'clock on the [4] evening in question, plaintiff, in company with her husband and two lady friends, Mrs. Gaasch and Mrs. Hankins, reached Glasgow by train and went to the Shannon Hotel to spend the night. Plaintiff and her husband were assigned to room 22 on the third floor. The two friends were assigned to room 23, immediately adjoining room 22. Access to room 23 could be had only through room 22 by a connecting doorway; the two rooms being apparently constructed for use as a suite. After having supper, plaintiff with her two friends left their rooms, and were not in them again until about midnight, when they returned and retired to bed. The door between the rooms was then closed. Roy Jones, the husband of plaintiff, had not up to this time been to the room, and did not then accompany plaintiff, but remained about the lobby until half an hour later, when he also retired. While he was engaged in getting undressed for bed, in response to a rap on the door leading from the hall, he opened it wide enough to ascertain what was wanted. He found the defendant Lila Shannon there, who inquired, "Who's making all this noise in here?" He answered that no one was making noise that he knew of. What thereafter occurred is related in detail by this witness, the plaintiff, Mrs. Gaasch, and Mrs. Hankins. Their several statements tend to establish these facts: That with a show of anger, accompanied by threats of violence, Mrs. Shannon forced her way, not only into room 22, but also into room 23; that she charged the occupants of both with disturbing herself and guests by loud talk and laughter, and by stamping on the floor; that this was done in a loud and boisterous manner; that when

this was denied by Mr. Jones, with the request that she leave the room, she threatened to throw him out of the window; that she persisted in the charge, telling them that they must either behave or leave the house, and that finally, when Mr. Jones said to her that if they had to leave the house they would do so, she ordered them to get out and then left; that Mr. Jones then told the plaintiff, who was lying in bed, to get up and dress, and to tell Mrs. Gaasch and Mrs. Hankins, which she did; that they all dressed and proceeded down to the lobby on their way out; that Mrs. Shannon, who had preceded them to the lobby, demanded payment for their rooms for the night, besides the price of supper for the four the previous evening, and also for breakfast next morning; that Mr. Jones thereupon paid the price of the supper for the four, but declined to pay more; that she prevented them from reaching the door leading into the street, by standing in their way and threatening to knock Mr. Jones' head off, and pushing the plaintiff from the door; that she took the hand baggage of all the party and held it until the entire bill was paid, calling in a policeman to assist her in compelling payment; that upon its payment by Mr. Jones they all left the hotel, and after searching for some other hotel or lodging-house where they could find lodging for the rest of the night, and not being able to find one, they went to the house of a friend, where they spent the rest of the night. The testimony of these witnesses tends to show, further, that when they finally secured lodging plaintiff had become ill from nervous shock, and continued in that condition for a week afterward. Before they finally left the hotel, Mr. Jones inquired for the defendant W. F. Shannon, in order to adjust the controversy with him, but was told by Mrs. Shannon that he was in bed and that she was the landlady. There is no controversy that she had general charge and supervision of the rooms and guests. Her account was in direct conflict with the foregoing in every material particular. She stated that she and her husband, who, she said, were asleep in their room immediately below rooms 22 and 23, were aroused by a noise

of loud talk and laughter and stamping on the floor above; that she went up to ascertain the cause of it; that upon going into the rooms, to which she was admitted after rapping at plaintiff's door, she requested the occupants to refrain from creating further disturbance, calling their attention to the fact that there were other guests in the house who should not be disturbed. She denied that she threatened any violence to any one, either in the plaintiff's room or in the lobby. She stated, further, that both while in plaintiff's room and after the party had reached the lobby she insisted that they should continue to occupy their rooms for the rest of the night, refraining in the meantime from making noise as they had done, but that they refused to do so. She admitted that she exacted payment of the amount paid by Mr. Jones before she consented that the party might leave the hotel.

This brief synopsis of the evidence is sufficient to show that it presented a substantial conflict, the solution of which was primarily the province of the jury. As we have so often said, the conclusion of the jury in such a case must be accepted as final and conclusive, subject to the rule, however, that it is within the sound legal discretion of the trial judge to grant a new trial on motion of the losing party, if, aided by his recollection of the appearance and conduct of the witnesses in giving their testimony at the trial, he is impelled to the conclusion that the evidence as a whole preponderates against the verdict. (*Orr* v. *Haskell*, 2 Mont. 225; *Western Min. Supply Co.* v. *Melzner*, 48 Mont. 174, 136 Pac. 44; *Gibson* v. *Morris State Bank*, 49 Mont. 60, 140 Pac. 76.) Otherwise the motion should [5] be denied. In no case will the conclusion of the trial judge in disposing of the motion be revised by this court, except for manifest abuse of discretion. The motion for a new trial in this case was determined by a judge other than the [6] one who presided at the trial. In such a case the judge is in no better position to determine the motion than is this court. Our office in this case, therefore, is not to determine whether the judge was guilty of an abuse of discretion in deny-

ing the motion, but whether the evidence as it is presented in the printed record preponderates decisively against the verdict. (*Gibson* v. *Morris State Bank, supra.*) Having carefully examined the evidence, keeping in mind the limitations of the rule announced in the case just cited, we are of the opinion that it does not preponderate against the conclusion of the jury that Mrs. Shannon wrongfully ejected plaintiff, and is therefore liable to her for compensatory damages.

As remarked by the judge in determining the motion for a [7] new trial, the order to get out of the room, which also meant to leave the hotel, was addressed by Mrs. Shannon to the plaintiff, as well as to her husband, and operated as a wrongful ejection of her, as well as the husband, though she dressed and accompanied him at his suggestion. Mr. Shannon was not present and knew nothing of what occurred until next morning. Yet it cannot be controverted that Mrs. Shannon sustained toward him the relation of servant or agent, and for present purposes it is immaterial which relation she sustained. Therefore he is liable also. It is elementary that the principal is liable in damages for wrongs done by the agent while in the discharge of the duties intrusted to him by the principal, even though the latter is ignorant of them.

As to exemplary damages: In this character of action the defendant is liable to respond in exemplary damages, when it [8] appears that he has been guilty of malice, actual or presumed, in committing the wrong rendering him liable for compensatory damages. (Rev. Codes, sec. 6047.) "The words 'malice' and 'maliciously' import a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (Rev. Codes, sec. 8099.) We think that the jury were justified in presuming that the conduct of Mrs. Shannon was actuated by a malicious motive. If the plaintiff and her husband and companions were not creating a disturbance—and we must assume that the jury found that they were not—she had no right to enter their rooms as she did. The order for them to vacate

the rooms and leave the hotel at that time of the night must necessarily have been a source of vexation and annoyance. This conduct, coupled with that exhibited by Mrs. Shannon in the lobby in exacting payment for the rooms and breakfast, which under the circumstances she clearly had no right to exact, is sufficient to warrant the presumption that she was prompted by a malicious motive, within the meaning of the statute, *supra,* and fully justified the jury in awarding exemplary damages as against her. As in an action for malicious prosecution, if the evidence discloses the want of probable cause, the jury may infer malice, so by parity of reasoning the ejection of the plaintiff, appearing to have been without reason or excuse, accompanied by the perpetration of the further wrongful exaction of payment of an unlawful demand, furnished the basis for the presumption that her conduct throughout was prompted by malice. (*Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33; *Grorud* v. *Lossl,* 48 Mont. 274, 136 Pac. 1069.)

Counsel contend that, since the evidence discloses that W. F. Shannon was not present and took no part in the trespass upon plaintiff's rights, and did not thereafter ratify Mrs. Shannon's [9] acts, her malice was not imputable to him, and therefore the verdict against him for exemplary damages cannot stand. They contend, further, that, since the plaintiff elected to sue the husband and wife jointly, she elected to waive exemplary damages if she could not recover them against both. We think the first contention should be sustained. The courts in some of the states announce the broad doctrine that a principal is liable in exemplary damages for the acts of his agent, however tortious and wrongful, when they are done in the regular course of business, without regard to whether they were previously authorized or subsequently ratified by the principal. (*Rucker* v. *Smoke,* 37 S. C. 377, 34 Am. St. Rep. 758, 16 S. E. 40; *Goddard* v. *Grand Trunk Ry.,* 57 Me. 202, 2 Am. Rep. 39.) The courts in other states hold to what seems to us the better rule: That a principal may not be held accountable for the malignant motives of his agent, unless it appears that he

authorized the act on account of which recovery is sought, or that he participated in the commission of it or subsequently ratified it. (*Burns* v. *Campbell,* 71 Ala. 271; *Becker* v. *Dupree,* 75 Ill. 167; *Nightingale* v. *Scannell,* 18 Cal. 315; *Lightner Min. Co.* v. *Lane,* 161 Cal. 689, Ann. Cas. 1913C, 1093, 120 Pac. 771.)

It is true that we held in the case of *Grorud* v. *Lossl,* 48 Mont. 274, 136 Pac. 1069, that the malicious motives of an officer of a corporation while acting in its behalf are imputable to the corporation. We also held in the case of *Burles* v. *Oregon Short Line Ry. Co.,* 49 Mont. 129, Ann. Cas. 1916A, 873, 140 Pac. 513, that a corporation is liable in exemplary damages for the willful and malicious acts of one of its servants. A corporation, however, is an artificial person, and can only act through agents; and if the malignant motives of the agent are not imputable to it, it would necessarily follow that it could not be held liable for the malicious acts of its agents in any case. The corporation cannot, as a natural person, participate in any maliciously wrongful act, and it is not to be supposed that the board of directors—the executive body of the corporation—would by a formal resolution authorize such an act or by the same method ratify it. In the *Grorud Case,* the president of a corporation had instituted a baseless criminal prosecution against the plaintiff for the alleged theft of money of the corporation. If the malice of the president could not be imputed to the corporation, it could not have been held liable at all, and the only recourse of the plaintiff would have been against the president. In that case the question of exemplary damages did not arise.

In the case of *Burles* v. *Oregon Short Line Ry. Co.,* however, it was distinctly held that, where the act of the servant was prompted by a willful disregard of the rights of the plaintiff, his motive was properly imputable to the company. A natural person can act for himself, and therefore the malignant motive of another should not be imputed to him unless, under the rule of the cases cited above, he directly or indirectly authorized

or subsequently ratified the wrongful act. It seems to us that, whatever may be assigned as the foundation for it, a clear, distinction is to be recognized between a corporation and a natural person, when we come to fix responsibility for the acts of their agents.

Now, it is not controverted that Mr. Shannon was not present when the plaintiff was ejected; nor is there any evidence [10] that he knew what Mrs. Shannon's intention was when she went up to the room of plaintiff. Nor, again, is there any evidence that he ratified her act. The evidence does not go any further than to show that she was authorized to supervise the conduct of the guests of the house, and eject anyone who by his conduct created a disturbance and thus trespassed upon the rights of other guests. True, Mr. Jones testified that on the next morning he informed Mr. Shannon that the party had been ordered out, whereupon the latter stated that Mrs. Shannon had authority for that purpose. This statement, however, falls short of showing that he had knowledge of the attendant circumstances without which there could be no such ratification as would subject him to the imputation of malice. (*Weidenaar* v. *New York L. Ins. Co.*, 36 Mont. 592, 94 Pac. 1; 1 Am. & Eng. Ency. of Law, 2d ed., 965.) Malice of the agent may not be imputed to the principal merely from the fact that the agent did the wrongful act complained of. (*Haines* v. *Schultz*, 50 N. J. L. 481, 14 Atl. 488; *Eviston* v. *Cramer*, 57 Wis. 570, 15 N. W. 760; *State* v. *Mason*, 26 Or. 273, 38 Pac. 130; *Krug* v. *Pitass*, 162 N. Y. 154, 76 Am. St. Rep. 317, 56 N. E. 526; *Davis* v. *Hearst*, 160 Cal. 143, 116 Pac. 530; *Lake Shore & M. S. Ry. Co.* v. *Prentice*, 147 U. S. 101, 37 L. Ed. 97, 13 Sup. Ct. Rep. 261.)

It does not follow, however, that because plaintiff joined the defendants in the one action, she should be held to have waived her right to recover exemplary damages against Mrs. Shannon [11] on the ground that Mr. Shannon is not also liable. Under the instructions of the court, the jury found and assessed exemplary damages against the two defendants separately.

Since the evidence justified the finding against both for compensatory damages, and against Mrs. Shannon for exemplary damages, we do not think that the verdict should be set aside, except as to the exemplary damages awarded against Mr. Shannon. Though it will be perhaps somewhat difficult to formulate a judgment allowing a recovery against both for compensatory damages and for exemplary damages against Mrs. Shannon only, it is not impracticable to do so. Under our liberal practice there seems to be no reason why the prevailing party may not, in this form of action, have judgment against all the defendants for the amount awarded jointly against all, and against one for an additional amount awarded separately against him, where the evidence, as in this case, warrants it. This practice has been approved by courts in other jurisdictions. (*Mauk* v. *Brundage,* 68 Ohio St. 89, 62 L. R. A. 477, 67 N. E. 152; *Waggoner* v. *Wyatt,* 43 Tex. Civ. App. 75, 94 S. W. 1076; *Nelson* v. *Halvorson,* 117 Minn. 255, Ann. Cas. 1913D, 104, 135 N. W. 818.)

It is contended that the court erred in submitting instruction No. 6. This instruction authorized the jury to award exemplary damages against Mrs. Shannon, if they believed that she acted maliciously, and also against W. F. Shannon, if they found that with full knowledge of the facts and circumstances he ratified and approved her acts. There is no merit in this contention.

It is insisted that the court erred in admitting evidence of [12] what occurred in the lobby after the plaintiff and her husband started to leave the hotel. What transpired there was a part of the whole occurrence, which began in plaintiff's room and ended only when she had finally reached the street. There was no error.

It is earnestly argued that the verdict is so excessive as to indicate that it was given under the influence of passion and [13] prejudice. This case, however, falls within that class of cases in which the amount to be awarded rests entirely in the discretion of the jury, and their conclusion may not be revised, unless

the result of their deliberations is such as to shock the conscience
and understanding. It is true that the amount awarded is
large; yet we may not overlook the fact that the ejection
of plaintiff was wholly without justification, that she was forced
to leave the hotel at a late hour of the night, that she was finally
compelled to go to the house of a friend because she could not
find accommodations at any other hotel, that she suffered the
humiliation inseparable from such an occurrence, and that she
was made ill by the nervous condition induced by it, which con-
tinued throughout the night and the following week. Consider-
ing all these facts, we do not feel justified in concluding that the
award was the result of passion and prejudice indulged by the
jury, rather than of their calm deliberate judgment.

There is no standard of measurement by which to determine
the amount of damages to be awarded, other than the intelli-
gence of the jury, made up of impartial men governed by a
sense of justice. To the jury, therefore, is committed the exclu-
sive task of examining the facts and circumstances of each case
and valuing the injury and awarding compensation in the shape
of damages. "The law that confers on them this power, and
exacts of them the performance of the solemn trust, favors the
presumption that they are actuated by pure motives. It there-
fore makes every allowance for different dispositions, capaci-
ties, views, and even frailties in the examination of heterogene-
ous matters of fact, where no criterion can be applied; and it is
not until the result of the deliberations of the jury appears in a
form calculated to shock the understanding, and impress no
dubious conviction of their prejudice and passion, that courts
have found themselves compelled to interpose." (1 Graham
& Waterman on New Trials, p. 451.)

We have examined the other contentions made by counsel, but
find no merit in them.

As to Mrs. Shannon, the order is affirmed. As to W. F. Shan-
non, the cause is remanded, with directions to the district court
to grant him a new trial unless, within twenty days after the

*remittitur* is filed in that court, the plaintiff remit the amount of exemplary damages awarded against him. If such remission is made, the order will stand affirmed as to him also.

Mr. Justice Sanner and Mr. Justice Holloway concur.