*Judgment reversed. Luke and Bloodworth, JJ., concur.*
DECIDED DECEMBER 9, 1919.

Accusation of larceny; from city court of Americus—Judge Harper. June 21, 1919.

*Hixon & Pace,* for plaintiff in error.

*Zach. Childers,* solicitor, contra.

---

## 10793.  NEWCOMB HOTEL COMPANY v. CORBETT.

BROYLES, C. J.  The amended petition, properly construed as a whole, was not subject to any ground, either general or special, of the demurrer interposed, and the court properly so ruled.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*
DECIDED DECEMBER 9, 1919.

Action for damages; from city court of Savannah—Judge Freeman. June 7, 1919.

Lula L. Corbett sued the hotel company for damages on account of alleged conduct of servants and agents of the defendant toward her while she was a guest in its hotel. The petition alleges, in substance, that shortly after her arrival in the City of Savannah on a given date she became a guest of the hotel; that she retired to her room for the night, and several hours later the telephone bell in her room rang; she got out of bed and answered the call, and a voice said, "Some one wants to talk to you;" she waited a reasonable length of time, returned to her bed, and in a few minutes was again called over the telephone in her room, and a voice at the telephone said, "Is that you?" (calling a name

she did not understand), and then said, "This is Mabel, when are you coming home?" whereupon she told the person speaking (whom she did not know) to ring off and not to disturb her. Shortly afterwards there were repeated raps upon her door; she thought a mistake had been made, and paid no attention to the raps, and a voice from without said, "This is the house detective. Open the door." She said, "Leave that door, I will not open it. I have retired and am now undressed." "Don't disturb me." She telephoned to the night clerk on duty at the desk of the hotel and told him, "if he had a house detective or any one else, to send them up to her room door, as there was some one at her door trying to get in." She again retired and heard men talking in the hall. There was another rap upon her door, which she did not answer, and the door of her room was opened by a pass-key, and she was surprised to see the man who claimed to be the house detective, accompanied by a police officer of the City of Savannah, who was in full uniform, standing at the door, flashing a light upon her. She was outraged at their conduct and demanded what they meant by intruding on her privacy, and the police officer replied, "We expected to find a man in this room, but we have made a mistake." He asked her name, and she told him, and he said he had seen the name on the book downstairs. She ordered the men out of her room, after first telling them to search it to see if there was any man present. She was "shocked to the extreme, and, as a result of the treatment she received, was in a highly nervous condition." It was the duty of the defendant, in operating its telephone exchange, not to have allowed her to be thus disturbed at that unreasonable hour of the morning. No communication could be had through the telephone in her room without passing through an exchange in the office of the hotel, where connections were made with telephones in the other rooms of the hotel, as well as outside in the city; and thus the servants and agents of the defendant had direct supervision over all telephone calls going to her room and to the other rooms of the hotel. She conducted herself in a proper and ladylike manner, and was entitled to the protection of the defendant during the time she was a guest at the hotel. In paragraph 17 it is alleged, that the telephone calls to her room, the raps upon her door, and the action of the police officer were all caused by the servants and agents of

the defendant, and that she is unable to state their names, for want of sufficient information. It is further alleged, that the presence of the police officer at her door was caused by the servants and agents of the defendant (whose names are unknown to her), who conducted the officer to her room and then entered her room as stated above, having informed him that acts of immorality were being conducted in the room, which charge was false. She "therefore shows that she has been injured and damaged in the sum of twenty thousand dollars." By amendment it is alleged, that the person rapping at her door was the house detective of the defendant, who was then and there acting within the scope of his authority and in obedience to his master's orders; that the police officer was accompanied to the plaintiff's room by the house detective, who was then and there acting within the scope of his authority and in obedience to his master's orders; and that the servants and agents referred to in paragraph 17 were the night clerk in charge of the desk at the hotel, the telephone operator operating the telephone exchange inside the hotel, and the house detective.

The defendant demurred generally and on numerous special grounds. In the demurrer it is contended that the petition is duplicitous, in that it does not show whether the action is intended to be brought on a breach of contract or a breach of duty, and, if on a breach of duty, whether for a slander or an interference with the privacy of the plaintiff. It is also contended that the petition fails to show that the acts of the alleged servants and agents were within the scope of their employment and done under their master's authority; that the allegations as to their authority are merely statements of a conclusion. The court overruled the demurrer, and the defendant excepted.

*Edward S. Elliott,* for plaintiff in error, cited: 116 *Ga.* 309 (2); 78 *Ga.* 733; 6 *Ga. App.* 470; 10 *Ga. App.* 169; 144 *Ga.* 695; 12 *Ga. App.* 214; 20 *Ga. App.* 546; 142 Cal. 681 (65 L. R. A. 88); 111 *Ga.* 814; 108 *Ga.* 37; 127 *Ga.* 194 (7); 126 *Ga.* 404 (3); 100 *Ga.* 213; 106 *Ga.* 460; 12 *Ga. App.* 318; 4 *Ga. App.* 131 (4); 127 *Ga.* 805 (3); 131 *Ga.* 375-7; 133 *Ga.* 414 (3); 142 *Ga.* 415; 12 *Ga. App.* 364; 128 *Ga.* 567, 573; 21 *Ga. App.* 368 (5a); 136 Fed. 161 (66 C. C. A. 469, 69 L. R. A. 653).

*Robert L. Colding, Oliver & Oliver,* contra, cited: 193 N. Y. 397 (21 L. R. A. (N. S.) 860, 86 N. E. 527); 88 Kan. 58 (42

L. R. A. (N. S.) 830, 127 Pac. 612) ; 54 *Ga.* 635, 638-9 ; 77 *Ga.* 409 ; 100 *Ga.* 213 ; 113 *Ga.* 414 ; 126 *Ga.* 404 ; 14 *Ga. App.* 311-12 (1,2) ; 10 *Ga. App.* 693 (3) ; 9 *Ga. App.* 375 ; 130 *Ga.* 742.