BENNETTS, RESPONDENT, *v.* SILVER BOW AMUSEMENT CO., APPELLANT.

(No. 4,959.)

(Submitted November 22, 1922. Decided December 18, 1922.)

[211 Pac. 336.]

*Personal Injuries — Moving Picture Theaters — Negligence — Contributory Negligence—Jury Question—Nonsuit—Res Adjudicata—Excessive Verdicts.*

Nonsuit—*Res Adjudicata*—Judgment in Prior Action on Merits—Evidence.
1. Where the judgment of nonsuit in a prior action between the same parties involving the same subject matter in a subsequent action did not disclose that it had been rendered on the merits, refusal to permit the judgment-roll to be introduced in evidence on a plea of *res adjudicata* was proper.

Personal Injuries—Complaint—Contents.
2. In a personal injury action charging negligence, the complaint must allege that defendant owed a legal duty to plaintiff, that he failed to perform it, that damages resulted, and that his breach of duty was a proximate cause of the injury.

Same — Moving Picture Theater — Safety of Premises — Degree of Care Required.
3. Upon the proprietor of a theater the law imposes the duty of using ordinary or reasonable care to have the premises safe as well

---

3. Liability of one maintaining a place of amusement for the safety of its patrons, see notes in 5 Ann. Cas. 926; 15 Ann. Cas. 517; Ann. Cas. 1915B, 546; Ann. Cas. 1917D, 931; Ann. Cas. 1918E, 1073; 1 L. R. A. (n. s.) 427; 3 L. R. A. (n. s.) 1132; 19 L. R. A. (n. s.) 772; 32 L. R. A. (n. s.) 713; 42 L. R. A. (n. s.) 1071; L. R. A. 1915F, 690.

[65 Mont. 340.]
as to warn the patrons of any hidden or lurking danger on the premises.

Same—Moving Picture Theater—Safety of Premises—Negligence—Jury Question.

4. In an action for personal injuries sustained by a patron of a moving picture theater claimed to have been due to the proprietor's negligence in placing chairs on a platform raised from four to eight inches above the level of the aisle, in not warning plaintiff of that fact and in not providing light to enable the patrons to see where they were going, *held* that the question of defendant's negligence was a jury question and that therefore a motion for directed verdict in his favor was properly overruled.

Same—Moving Picture Theater—Contributory Question—Jury Question.

5. The evidence showing that defendant's moving picture theater was in a darkened condition when plaintiff fell, that she looked toward the floor when about to leave but was unable to see the floor and therefore could not see the step down from the platform to the floor, causing her to fall and break a leg, the contention that she was guilty of contributory negligence as a matter of law cannot be sustained.

Same—What not Excessive Verdict.

6. Verdict for $3,500 *held* not excessive for injuries consisting of a broken bone about four inches above the ankle and the chipping of another bone at the ankle of the same leg, plaintiff having been confined to her bed for three weeks and compelled to walk on crutches for a considerable period thereafter, suffering great pain and still suffering pain at the time of the trial, rendering her incapable to perform her duties as a housewife.

*Appeals from District Court, Silver Bow County; Edwin M. Lamb, Judge.*

Action by Beatrice Bennetts against the Silver Bow Amusement Company. From a judgment for plaintiff and from an order denying defendant's motion for a new trial, the defendant appeals. Affirmed.

*Messrs. Walker & Walker* and *Mr. C. S. Wagner,* for Appellant, submitted a brief; *Mr. Frank Walker* argued the cause orally.

We think the mere fact that the theater was constructed as alleged in the pleadings and disclosed by the proof is wholly insufficient upon which to predicate negligence on defendant's

6. Excessiveness of verdicts in actions for personal injuries other than death, see notes in 16 Ann. Cas. 8; Ann. Cas. 1915D, 488; L. R. A. 1915F, 30.

part whether the theater was light or dark at the time plaintiff entered or undertook to leave, for unless the defendant ought to have foreseen that such an accident could reasonably have been anticipated he is not chargeable with negligence. (*Loftus* v. *Union Ferry Co.*, 84 N. Y. 455, 38 Am. Rep. 533; *Dunning* v. *Jacobs*, 15 Misc. Rep. 85, 36 N. Y. Supp. 453; *Butcher* v. *Hyde*, 30 N. Y. Supp. 1073.) In the case of *Hollenbaek* v. *Clemmer*, 66 Wash. 565, 37 L. R. A. (n. s.) 698, 119 Pac. 1114, a directed verdict in favor of the defendant was upheld under facts somewhat similar to those in the case at bar. (See, also, *Baker* v. *Butterworth*, 119 Va. 402, L. R. A. 1916F, 1287, 89 S. E. 849.)

The theater was dark when plaintiff entered and, according to her testimony, the same condition prevailed when she sought to leave bearing a child in her arms, and if her injuries were not contributed to by her own negligence, then they most certainly were due to accident and misfortune over which the defendant had no control. (*Sneed* v. *Moorehead*, 70 Miss. 690, 13 South. 235; *Cook* v. *McGillicuddy*, 106 Me. 119, 75 Atl. 378; *Dunn* v. *Kemp & Hebert*, 36 Wash. 183, 78 Pac. 782.)

The facts in this case do not fall within the doctrine announced by this court in *Montague* v. *Hanson*, 38 Mont. 376, 99 Pac. 1063, because here the accident resulting in plaintiff's injuries was not occasioned by some hidden or unknown cause in the nature of a trap.

Plaintiff was awarded $3,500. By instruction No. 14 all claims for medical attention, physicians' and surgeons' services, or medical supplies, and services of maid or washwoman were withdrawn from the consideration of the jury, and the verdict is, therefore, one for general damages only. We call attention to a few former decisions by this court on the question of excessive damages: *Cornell* v. *Great Northern Ry. Co.*, 57 Mont. 177, 187 Pac. 902; *Emerson* v. *Butte Electric Ry Co.*, 46 Mont. 454, 129 Pac. 319; *Previsich* v. *Butte Electric Ry. Co.*, 47 Mont. 170, 131 Pac. 25.

*Messrs. Wheeler & Baldwin* and *Mr. David H. Wittenberg,* for Respondent, submitted a brief; *Mr. James H. Baldwin* argued the cause orally.

It is settled law in this state that negligence may be based on danger due to the nature of original construction as well as a failure to keep the thing built in reasonable repair; that an offset in a way over which people may reasonably be expected to pass may constitute a defect for which liability for injury resulting therefrom may arise, and that whether or not there is in fact a defect with resulting liability is a question of fact for the jury to determine. (*Leonard* v. *City of Butte,* 25 Mont. 410, 65 Pac. 425; *Metz* v. *City of Butte,* 27 Mont. 506, 71 Pac. 761; *Pullen* v. *City of Butte,* 45 Mont. 46, 121 Pac. 878; *Phillips* v. *Butte etc. Fair Assn.,* 46 Mont. 338, 42 L. R. A. (n. s.) 1076, 127 Pac. 1011; 28 Cyc. 1392.)   The facts in the *Pullen Case* above are on all-fours with the facts in this case, except, that the step or offset there was in the sidewalk on a street intended for use and used by the public, while here the step or offset was part of the way intended for use and used by the public, as paid guests of appellant, at shows conducted by it.   The controlling principle and underlying reason is the same in both cases and the rules announced should control here. (Rev. Codes 1921, sec. 8740.)   In the *Phillips Case,* in considering the duties owed by the owner of a race-track to its patrons, this court said: ''The patron's situation is not different from that of the pedestrian traversing the city sidewalks.''

Nor was it necessary that respondent should affirmatively show by evidence that the step or offset actually constituted a defect in the way.   All the facts and circumstances being before it, it was a question for the jury to determine whether the step or offset constituted a defect which appellant in the exercise of ordinary care and prudence for the safety of its patrons should have remedied, for the jurors were as well qualified to draw the proper inference from their own experience as witnesses would be. (*Metz* v. *City of Butte,* 27 Mont.

506, 71 Pac. 761; *Cummings* v. *Reins Copper Co.*, 40 Mont. 599, 107 Pac. 904; *Copenharver* v. *Northern Pac. Ry. Co.*, 42 Mont. 453, 113 Pac. 467.)

The rule that a person must be vigilant to apprehend and avoid danger applies only when the person approaches a known and visible place of danger. (*Cannon* v. *Lewis*, 18 Mont. 402, 45 Pac. 572; *Nilson* v. *City of Kalispell*, 47 Mont. 416, 422, 47 L. R. A. (n. s.) 587, 132 Pac. 1113; *Irving* v. *Town of Stevensville*, 51 Mont. 44, 149 Pac. 483; *Montague* v. *Hansen*, 38 Mont. 376, 99 Pac. 1063.)

On the question of excessive damages, see *Hunt* v. *Van*, 61 Mont. 395, 202 Pac. 573; *Kirk* v. *Montana Transfer Co.*, 56 Mont. 292, 184 Pac. 987; *Jones* v. *Shannon*, 55 Mont. 225, 175 Pac. 882; *White* v. *Chicago etc. Ry. Co.*, 49 Mont. 419, 143 Pac. 561.

MR. CHIEF COMMISSIONER LEIPER prepared the opinion for the court.

Plaintiff instituted this action to recover damages for personal injuries. Trial was had to a jury, which resulted in a verdict for plaintiff in the sum of $3,500. Judgment was entered on such verdict. Motion for a new trial was overruled. From that judgment, and from the order denying its motion for a new trial, defendant appealed.

It is admitted that the defendant is a corporation; that it constructed the Rialto Building, in the city of Butte, about the year 1917, and was at all of the times mentioned in the complaint the owner thereof; that a part of this building, known as the Rialto Theater, was constructed for the purpose of operating therein a motion picture show, which the general public were invited to attend; and that it has been continuously used by the defendant as such. The screen, upon which the pictures are shown, is in the front part of the theater. The floor of the theater is built on an incline and slopes from the rear to the front. At the rear there are some loges. About the center of the theater, and extending across it from north to south, is an aisle. Aisles also extend from

[65 Mont. 340.]

the rear, or eastern end of the theater, to the front or western end thereof. Between the aisle running north and south and the loges there were constructed a succession of cement platforms, which are raised above the level of the aisle. These platforms are level and are about thirty-three inches in width and are raised above the adjacent aisle about four inches at the rear and about eight inches at the front. A row of chairs is placed near the rear of each one of these platforms. In order to reach these chairs, it is necessary for one to step up, from the aisle, upon the platform. Between the center aisle and the front of the theater the chairs are placed on a level with the aisles.

On January 23, 1919, the plaintiff, together with her husband and two small children, went to the defendant's theater, paid the admission charges, and were shown to seats by an attendant. At the time of the plaintiff's entrance, a picture was being shown, the theater was darkened, and the attendant did not carry any light of any kind. The plaintiff was seated in the fourth chair from the aisle on one of the raised platforms. The plaintiff, with her husband and children, remained until the conclusion of the show. The husband left a short time before plaintiff, taking with him the younger of the two children. Plaintiff, carrying the older of the two children, arose to leave the theater which was still in a darkened condition. In stepping from the cement platform to the aisle, her heel caught on the edge of the platform, causing her to fall. In falling she broke the smaller bone of her left leg, about four inches above the ankle, and the tip of the larger bone was broken.

Plaintiff testified that she did not know that there was any platform there; that no one called her attention to it; that, in coming from the chair which she occupied to the place where the injury occurred, she looked toward the floor, but that it was so dark she could not see the floor; that she had been in the theater before, but had not sat where the seats were raised above the level of the aisle; and that in going to the chair occupied by her she traveled over the same ground covered by her in leaving the theater.

The defendant is charged with negligence in the construction of the building, through placing the chairs upon these platforms, raised above the level of the aisles, and in not lighting the building so that the plaintiff, and other patrons of the theater, would have been enabled to see the raise from the aisle to the platform, and in its failure to have, in some way, or by some means, advised the plaintiff of this platform; and it is charged that this negligence was the proximate cause of plaintiff's injury. The defendant, in its answer, denies that it was negligent in anywise, and alleges as affirmative defenses the following: (a) *Res adjudicata*; (b) contributory negligence on the part of plaintiff; and (c) unavoidable accident and misfortune over which defendant had no control. These defenses were put in issue by the reply.

The only evidence offered by defendant was the judgment-roll in a former trial of this action. Objection was made and sustained to the introduction of this evidence. The exclusion of this judgment-roll is assigned as error.

The judgment-roll offered in evidence discloses that the parties in that suit are the same as those in the instant case; that the subject matter is the same; that the action disclosed by the judgment-roll came on regularly for trial; counsel for both parties appeared; a jury was impaneled and sworn; testimony in behalf of plaintiff was adduced, and that upon its completion a motion for a nonsuit was made by the defendant's counsel and granted. A judgment was thereupon entered, which is in part as follows: "It is ordered, adjudged, and decreed [1] * * * that the defendant be and it is hereby granted a nonsuit, and further that the defendant do have and recover of and from the plaintiff its costs and disbursement herein expended and hereby taxed at the sum of $——."

Section 9317 of the Code of 1921 provides when an action may be dismissed or a nonsuit entered. Subdivision 5 of that section is as follows: "By the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove a sufficient case for the jury."

Obviously, the action of the trial court, as disclosed by this judgment-roll, must have been based upon subdivision 5, *supra,* for (a) the plaintiff did not dismiss the action; (b) it was not dismissed upon the written consent of either party; (c) it was not dismissed because of the failure of the plaintiff to appear at the time of the trial; (d) the plaintiff did not abandon the cause; and (e) the dismissal was not by reason of the provisions of either subdivision 6 or 7 of section 9317, *supra.*

Section 9318, Revised Codes of 1921, provides as follows: "In every case, other than those mentioned in the last section, judgment must be rendered on the merits."

In effect, then, the section last above quoted provides that a judgment of nonsuit, entered upon motion of defendant when "the plaintiff fails to prove a sufficient case for the jury," is not a judgment on the merits.

Section 9320 of the Code of 1921 provides: "A final judgment dismissing the complaint, either before or after a trial, does not prevent a new action for the same cause of action, unless it expressly declares, or it appears by the judgment-roll, that it is rendered upon its merits."

This court, speaking through Mr. Justice Holloway in the case of *Glass* v. *Basin etc. Mining Co.,* reported in 35 Mont. 567, 90 Pac. 755, among other things, says: "In most of the states it is sufficient, in order to render a judgment a bar to another action for the same cause of action, that it was rendered on the merits. But that is not sufficient under our statute, when the judgment is one falling within the class designated in section 1007. [Section 1007 is section 9320, *supra.*] * * * So far as the judgment itself is concerned, there must be an express declaration of the fact that it is rendered on the merits; and if the judgment is silent, and recourse must be had to the judgment-roll, then what is it that must appear from such judgment-roll? Is it (1) *the fact* that the judgment was rendered on the merits; or (2) will it suffice that the court can draw the legal conclusion that such was the character of the judgment?

"The appellants contend for the first alternative, and the respondent for the second. But this question has also been settled by this court. In the former opinion (34 Mont., at page 95) this court further said: 'This provision (section 1007, Code Civ. Proc.), construed with the others, means nothing more nor less than that judgments of dismissal, whether included in the enumeration in 1004 or not,' shall not be a bar to another action upon the same cause of action, unless rendered on the merits, which *fact* must be expressly declared upon the face of the judgment or appear from the judgment-roll.' (*Glass* v. *Basin & Bay State Min. Co.,* 34 Mont., at page 95, 85 Pac. 746.) And this is also the law of the case, and, we think, clearly correct.

"The legislature certainly did not intend to set the matter at rest altogether in the one instance by requiring an express declaration of the *fact* that the judgment was upon the merits, when the judgment alone is offered as proof, and in the other leave it open for the many different conclusions which might be drawn from the same records by different courts. Obviously, what the legislature meant was that, if recourse is had to the judgment alone, the judgment must contain an express declaration of the fact that it was rendered upon the merits; and if the judgment is silent, then, if it appears by express declaration of the fact in the judgment-roll elsewhere than in the judgment, it will be sufficient to constitute the judgment a bar to another action for the same cause of action. This seems to be the holding of the court of appeals of New York upon a statute similar to our section 1007 above. (*Genet* v. *Delaware & Hudson Canal Co.,* 170 N. Y. 278, 63 N. E. 350). * * *

"In order, then, to successfully maintain that a judgment of the class mentioned in section 1007, above, is a bar to another action for the same cause of action, (1) such judgment must be upon the merits, and (2) *the fact* that it is upon the merits must appear by express declarations either from the judgment or elsewhere from the judgment-roll."

The statutes of Utah, in this regard, are similar to the provisions of our Code above noted. The supreme court of Utah,

in discussing this question, says: ''The rule thus declared by our statutes is in harmony with the overwhelming weight of authority. (1 Freeman on Judgments, sec. 261.) Mr. Black, in his work on Judgments (second edition), section 699, says: 'It is a settled and inflexible rule that a judgment of nonsuit is not a judgment upon the merits, and therefore is no bar to another suit upon the same cause of action.' And again, in section 703, he says: 'A judgment of dismissal may also be asked for on the trial at the conclusion of the plaintiff's evidence in chief. And the granting of such a motion can have no greater effect upon the cause of action than an involuntary nonsuit entered at the same stage. Hence the cases hold that the dismissal by the court of an action at law, while the same is on trial, and before its final submission, upon the ground that plaintiff has failed to establish his cause of action, is not a final determination on the merits, and therefore not pleadable against another action for the same cause.' In Am. & Eng. Ency. of Law, 2d ed., 801, this same rule is stated as follows: 'It is well settled in the United States that a judgment of nonsuit, or in the nature of a nonsuit, is not an adjudication upon the merits, but leaves the parties in the same condition, so far as the cause of action is concerned, as though no action had ever been instituted, and hence cannot constitute *res adjudicata.'* The doctrine thus announced in the text is supported by a long list of authorities cited in the footnote, which we deem it unnecessary to reproduce here. In the case of *Couch* v. *Welsh,* 24 Utah, 36, 66 Pac. 600, this court held that an instruction at the close of the plaintiff's testimony directing a verdict for the defendant on the ground of failure of proof is in effect a nonsuit. (*McKay* v. *Railway Co.,* 13 Mont. 15, 31 Pac. 999.) Mr. Spelling, in his work on New Trial & Appellate Procedure, section 352, volume 1, says: 'Whether plaintiff takes voluntary nonsuit, or be nonsuited on motion of defendant, the judgment should be of nonsuit and dismissal, and not on the merits.' '' (*Guthiel* v. *Gilmer,* 27 Utah, 496, 76 Pac. 628.)

The judgment rendered in the former action does not expressly declare, neither does it appear elsewhere in the judgment-roll, that the judgment formerly entered was rendered on the merits, and therefore the ruling of the trial court in excluding the offered evidence was proper.

It is next urged that the evidence is insufficient to sustain [2] the verdict and that the court erred in denying defendant's motion for a directed verdict. This action is predicated upon the alleged negligence of the defendant. Since actionable negligence arises only from a breach of legal duty, it follows that as a prerequisite to recovery, the plaintiff must allege and prove (a) that the defendant owed a legal duty to the plaintiff; (b) that the defendant failed to perform its duty; (c) that damages resulted; and (d) that the breach of duty was a proximate cause of the injury. (*Ecclesine* v. *Great Northern Ry. Co.,* 58 Mont. 470, 194 Pac. 143; *Fusselman* v. *Yellowstone Valley etc. Irr. Co.,* 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473.) It is admitted by the pleadings that defendant constructed the theater in question for the purpose of operating therein what is commonly designated a moving picture show; that at the time of the injury alleged to have been suffered by the plaintiff, the defendant was operating such a motion picture show continuously from 11 o'clock A. M. to 11 o'clock P. M. of each day; and that the public generally were invited to attend such show. It is further alleged and proven that the plaintiff accepted the invitation thus extended, paid the admission charge, and attended the [3] show. Under these circumstances, the law imposes upon the defendant the duty of "using ordinary care to have the premises safe, as well as to warn them of any hidden or lurking danger thereon." (*Montague* v. *Hansen,* 38 Mont. 376, 99 Pac. 1065.) The rule is thus stated in Cyc.: "The owner of a place of entertainment is charged with an affirmative positive obligation to know that the premises are safe for the public use, and to furnish adequate appliances for the prevention of injuries which might be anticipated from the nature of the performance, and he impliedly warrants the premises to be

reasonably safe for the purpose for which they are designed. He is required to use care and diligence to put and keep the premises and appliances in a reasonably safe condition for persons attending; and if he fails to perform his duty in this respect so that the premises or appliances are in fact unsafe, he may be held liable for personal injuries occasioned thereby. * * * When they accept his invitation and pay the prescribed admission fee, they have a right to assume that he has furnished a safe place for them to witness the performance. Reasonable care is held to be the measure of duty.'' (38 Cyc. 268, 269.)

The rule is announced in R. C. L. as follows: ''In accordance with the well-settled rule that an owner or occupant of lands or buildings who directly or by implication invites or induces others to go thereon or therein owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils, one who maintains a public resort or place of amusement is required by law to keep it in a reasonably safe condition for those who properly frequent the place. Where the public is invited to attend, it is the duty of the one who so invites to exercise all proper precaution, skill and care commensurate with the circumstances to put and maintain the place and every part of it in a reasonably safe condition for the uses to which it may rightly be devoted. A failure to comply with this duty may be negligence; and for an injury proximately caused by the negligence, the negligent party may be liable in damages, if the party injured is not guilty of contributory negligence.'' (26 R. C. L., § 14, p. 713.) To the same effect is *Phillips* v. *Butte etc. Fair Assn.*, 46 Mont. 338, 42 L. R. A. (n. s.) 1076, 127 Pac. 1011; Thompson on Negligence, sec. 985; 2 Cooley on Torts, 3d ed., p. 1259, and cases there cited; *Williams* v. *Mineral City Park Assn.*, 128 Iowa, 32, 111 Am. St. Rep. 184, 5 Ann. Cas. 924, 1 L. R. A. (n. s.) 427, 102 N. W. 783.

The defendant is charged with a breach of this duty through [4] (a) an act of commission, and (b) certain acts of omission. The act of commission complained of consists in the

manner of the construction of the theater, in that the chairs therein were placed upon platforms, which platforms were raised from four to eight inches above the level of the aisle. The acts of omission charged are: (1) That the theater was so darkened that the plaintiff was unable to see that the chairs were not on a level with the aisle; (2) that the attendant or usher who showed the plaintiff to the chair occupied by her did not carry any light so as to point out to the plaintiff the raise from the aisle to the platform; (3) that no warning or signal light was placed or kept at the point where the plaintiff was obliged to step up upon the platform or down from the platform to the aisle; (4) that the defendant did not by any means or in anywise advise the plaintiff of the fact that the chairs were on a platform raised above the level of the aisle. It is admitted that the theater was constructed in the manner charged. The undisputed evidence is that the plaintiff, upon entering the theater, was conducted to a seat upon one of the raised platforms by an attendant; that the theater was then in a darkened condition, and the attendant carried no light; that in going to her seat the plaintiff did not notice the platform; that while she had been in the theater before she did not know that there were any of these platforms therein, and that she had never before sat in that part of the theater where the seats were raised above the level of the aisle; that there were no signal or warning lights at the point where plaintiff was obliged to step up from the aisle to the platform; that no one advised her of the raise from the aisle to the platform; that she did not know that any such thing existed; and that when she left the theater it was still in a darkened condition. Plaintiff further testified that in going from her seat to the aisle she raised the seat nearest the aisle; that she looked toward the floor, but that it was so dark that she could not see the floor; that she caught her heel on the edge of this platform, fell, and broke her leg—and this testimony is undisputed.

The theater was constructed for the purpose for which it was used. It was used for the purpose of running a moving

picture show; an invitation was extended to people generally to attend these shows; and the fact is that it was patronized generally. In order to accommodate its patrons, the seats were placed within the theater by the defendant. The entrance to this theater is from Park street in the city of Butte. Its patrons, immediately upon leaving the street, entered the theater. A means, or way, or aisle, was prepared or constructed by the defendant, over which its patrons were to travel in passing from the entrance of the theater to the seat. This way or aisle consisted of an incline, then a step up of from four to eight inches upon a platform, thence to the seat. The patron of the theater, then, passed over the sidewalks of the city of Butte until he reached the entrance of the theater, then over the walk or way or aisle of the defendant, to the seat within the theater. No reason occurs to the writer why a different rule should apply to this case than that applicable to a case where the injury resulted from a defective sidewalk. Reasonable care is required of a city in regard to the maintenance of its sidewalks. The same degree of care is imposed upon the operator of a place of public entertainment. Both are for the use of the general public.

In the case of *Phillips* v. *Butte Jockey Club & Fair Assn.*, *supra,* the defendant conducted a place of amusement in the city of Butte, to which the general public was invited, and an admission fee charged. The action was brought to recover damages for injuries alleged to have been suffered by plaintiff while in attendance, as a patron, at defendant's place of amusement. This court, in discussing the degree of care required of the defendant, says: "The patron's situation is not different from that of the pedestrian traversing the city sidewalks, or a business man entering a railway depot to obtain information."

In the case of *Metz* v. *City of Butte,* 27 Mont. 506, 71 Pac. 761, the facts were that in constructing a sidewalk in the city of Butte, a step or offset, about five inches high, was left in the sidewalk; a great many pedestrians traveled over this walk, both in the daytime and in the night-time; that the

plaintiff, while passing over the sidewalk in the night-time, was injured by reason of this offset. The testimony in that case showed that the plaintiff did not know of the offset and no light was maintained at that point. It was there contended that the evidence was insufficient to show that the sidewalk was not reasonably safe for any person exercising due care; but this court, speaking through Mr. Justice Holloway, among other things, said: "All the facts and circumstances being before them, it was a question for the jury to determine whether or not the step or offset in the sidewalk constituted such a defect that the city, in the exercise of ordinary care and prudence, should have remedied. In *Leonard* v. *City of Butte,* 25 Mont. 410, 65 Pac. 425, this court held that, where the evidence showed that the sidewalk was composed of flagging, some part of which was so smooth that passers-by were frequently falling, it was a question of fact for the jury to say whether or not the walk was defective. In *City of Centralia* v. *Baker,* 36 Ill. App. 46, it was held that it was a question of fact for the jury to determine whether or not a walk was defective, where the evidence merely showed that one board had become warped by the sun so that it projected above the general level of the walk, thus presenting an obstruction against which passers-by were liable to stumble and fall. In *Town of Watertown* v. *Greaves,* 112 Fed. 183, 56 L. R. A. 865, 50 C. C. A. 172, the circuit court of appeals for the first circuit had under consideration precisely the same question as presented by this record, and held that, where the evidence showed a difference of three inches in the height of two adjoining portions of the walk, it was a question for the jury to say whether there was a defect in the walk. To the same effect are the decisions in *Tabor* v. *City of St. Paul,* 36 Minn. 188, 30 N. W. 765; *Redford* v. *City of Woburn,* 176 Mass. 520, 57 N. E. 1008; *Lamb* v. *City of Worcester,* 177 Mass. 82, 58 N. E. 474." (See, also, *Pullen* v. *City of Butte,* 45 Mont. 46, 121 Pac. 878.)

Defendant cites the case of *Hollenbaek* v. *Clemmer,* 66 Wash. 565, reported in 119 Pac. 1114, 37 L. R. A. (n. s.) 698;

but the facts in that case are not similar to those in the instant case. Neither does the law therein enunciated differ from the rule herein announced. In that case the plaintiff had attended the moving picture show of the defendant. After the show was over, she was directed to leave the theater by a side door, which she did. At the side door was a .step down of about seven inches, leading into the corridor of the theater. Near this step was a bright light. Plaintiff's contention was that the light blinded her as she came out of the darkened room, so that she did not see the step, and fell, breaking her leg. It was plaintiff's contention that the maintenance of this step was negligence on the part of the defendant. In passing upon this the Washington supreme court, among other things, says: "It is no doubt the rule that an owner of a place of public entertainment is charged with the duty to maintain a reasonably safe place for his patrons. * * * The mere fact that a step up or one down, or a flight of steps up or down, is maintained at the *entrance* or *exit,* is no evidence of negligence, especially if the step is in good repair and *in plain view.* There is no claim in this case that the step was in bad order, or not properly lighted, or was not in plain view of any person who might use it. * * * It is not uncommon to find a step up at the *entrance* of places where the public is invited, and it is certainly not negligence, as a matter of law, to construct floors above the level of the streets or sidewalks. It follows that it was not negligence to maintain a step down at the *exit* in question. It is apparent that it was the plain duty of the plaintiff to use her sense of sight and to look where she was stepping."

In the instant case the testimony discloses that the plaintiff did look, but on account of the darkened condition of the room she was unable to see the. floor, and therefore unable to see the step down from the platform to the aisle. The defendant requested that the jury be permitted to view or inspect the premises where the accident occurred. The court granted this request and the inspection was made.

Under all of the facts in this case, we think it was a question for the jury to determine whether or not the defendant had performed the duty which, under all circumstances, it owed to the plaintiff. It follows that the motion for a directed verdict was properly overruled.

Appellant urges that the verdict is contrary to the law as laid down by the court in instruction No. 13, which is as follows: ''You are instructed that it is a rule of law that every **[5]** person is bound to an absolute duty to exercise his or her intelligence to discover and avoid dangers which may threaten. When, therefore, a plaintiff asserts the right of recovery on the ground of negligence of the defendant, he or she is bound to show that he or she exercised intelligence to discover and avoid the danger which it is alleged was brought about by the negligence of the defendant. And if in this case you find that the plaintiff by the exercise of her intelligence could have discovered and avoided the danger of leaving the row of seats where she was seated to the aisle where she fell and was injured, then your verdict must be for the defendant.'' We think there is no merit in this contention. The argument advanced by the defendant in support of this specification of error is: (a) That the evidence discloses that the plaintiff had been in this theater a number of times before the time of the injury, and that therefore she is chargeable with knowledge of the existence of the step up from the aisle to the platform; (b) that since she went in and stepped up upon the platform, and came out by the same way or over the same ground, she was charged with knowledge of the step down from the platform to the aisle; (c) that she was guilty of contributory negligence, in that she did not use the care which she ought to have used in going from the seat which she occupied, but the undisputed testimony is that in that part of the theater between the center aisle running from north to south and the screen, the chairs are all placed on a level with the aisles, and that the plaintiff had never before sat in any part of the theater where the chairs were placed on platforms above the level of the aisles, and that she had no knowl-

edge that there were any such platforms within the theater. The jury having determined that the defendant was derelict in the performance of its duty in maintaining the step up from the aisle to the platform in an unlighted condition, the defendant cannot be heard to assert as a defense to this action its good fortune by reason of plaintiff's escape from injury when going upon the platform in question.

The undisputed evidence is that the theater was in a darkened condition; that the plaintiff used the means given to her to avoid danger, namely, her eyes, in that she looked toward the floor, but on account of the darkened condition of the theater was unable to see the floor, and therefore unable to detect the offset or step down from the platform to the floor.

What has been said hereinbefore disposes of defendant's contention relative to the giving of court's instruction No. 7.

It is finally urged that the award of damages made by the [6] jury is excessive. The verdict is for $3,500. The undisputed evidence is that the plaintiff broke one bone of her leg about four inches above the ankle, and chipped the larger bone of the leg at the ankle; that she was confined to her bed for about three weeks; that she walked on crutches for a considerable period of time thereafter; that she suffered considerable pain; that she still suffers pain as a result of the injury; and that by reason of the injury she has been and still is partially incapacitated from the performance of her duties as a housewife. There is other evidence of damage resulting from the injury.

By instruction No. 14 the jury were told: "In this case you will not be permitted to consider the question of damages claimed by plaintiff for medical attention, physician's or surgeon's services, or medical supplies, and services of maid or washwoman."

We are of the opinion that the verdict of the jury cannot be said to be excessive. This court, in the case of *Jones* v. *Shannon*, 55 Mont. 225, 175 Pac. 882, among other things, said: "There is no standard of measurement by which to determine the amount of damages to be awarded, other than the

intelligence of the jury, made up of impartial men governed by a sense of justice.  To the jury, therefore, is committed the exclusive task of examining the facts and circumstances of each case and valuing the injury and awarding compensation in the shape of damages.  'The law that confers on them this power, and exacts of them the performance of the solemn trust, favors the presumption that they are actuated by pure motives. It therefore makes every allowance for different dispositions, capacities, views, and even frailities in the examination of heterogeneous matters of fact, where no criterion can be applied; and it is not until the result of the deliberations of the jury appears in a form calculated to shock the understanding, and impress no dubious conviction of their prejudice and passion, that courts have found themselves compelled to interpose.' 1 Graham & Waterman on New Trials, p. 451.''  (*Hunt* v. *Van,* 61 Mont. 395, 202 Pac. 573; *Pullen* v. *City of Butte, supra.*)

We therefore recommend that the judgment and order be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

*Affirmed.*