## Margaret Gibbons, Appellee, v. Balaban & Katz Corporation, Appellant.

### Gen. No. 31,107.

1. Exhibitions and shows—*sufficiency of evidence to show fall of motion picture house patron due to uneven carpeting of aisles.* Evidence in an action for injury to a patron of a motion picture house sustained in a fall while leaving the place during a performance held not to show that such fall was due to uneven carpeting of the aisles.

2. Exhibitions and shows—*duty of motion picture house proprietor as to lighting aisles and stairways.* It is the duty of the proprietor of a motion picture house to exercise reasonable care to light the aisles and stairways so that patrons may safely enter and leave the house while the performance is in progress.

3. Exhibitions and shows—*sufficiency of lighting of motion picture house stairway is jury question.* Under the conflicting evidence of this case, it was a question for the jury whether a motion picture stairway was sufficiently lighted and whether the picture company was negligent in its lighting of the stairway at the time of plaintiff's fall thereon.

4. Exhibitions and shows—*contributory negligence of motion picture house patron in leaving while aisles were dark as jury question.* Under the evidence of the case, it was a jury question whether plaintiff was guilty of such contributory negligence in leaving a motion picture house while the aisles and stairways were dark and a picture was in progress as to bar all recovery.

Appeal by defendant from the Superior Court of Cook county; the Hon. Timothy D. Hurley, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1926. Affirmed. Opinion filed December 21, 1926.

Cassels, Potter & Bentley, for appellant; Ralph F. Potter and Kenneth B. Hawkins, of counsel.

Dunne & Corboy, for appellee; E. F. Dunne and Robert Jerome Dunne, of counsel.

Mr. Presiding Justice Gridley delivered the opinion of the court.

Plaintiff recovered a judgment for $1,500, against defendant, following the verdict of a jury, in an action

for damages for personal injuries sustained by her on the evening of May 11, 1924, at the Tivoli Theatre, a motion picture theatre, operated and controlled by defendant at No. 6325 Cottage Grove Avenue, Chicago.

Earlier in the evening plaintiff had purchased tickets of admission for herself and her minor daughter, and they, entering the theatre during the first exhibition that evening of the feature picture, were guided to seats in the balcony, alongside one of the middle aisles, by an usher who carried a flashlight. During the progress of the second exhibition they decided to leave, and arising from their seats while the theatre was in its usual darkened condition when pictures were being shown upon the screen, stepped into the aisle and walked a few steps to a stairway at one end of it. While slowly descending the stairs and "feeling" her way along, plaintiff, being ahead of her daughter, slipped or stumbled and fell to the foot of the stairs, breaking her left leg. At the foot of the stairs there was a cross-aisle, and from it there was a "tunnel" exit, just alongside the stairs and running in the opposite direction. She was taken to a hospital and treated, and did not resume her accustomed work for about four months. She incurred a physician's bill of $350, which the evidence showed was a reasonable charge for the services, and expended $870.50 for nurses, hospital bills, etc.

Plaintiff's declaration consisted of six counts, to which the general issue was pleaded. One of the counts, charging defendant's negligent failure to obtain a license from the city of Chicago to operate the theatre, was withdrawn by plaintiff during the trial. Of the remaining counts one charged that defendant "negligently furnished one of the steps" of the stairway in the balcony "with uneven carpeting." Another charged that defendant, in violation of its duty to patrons of the theatre, "negligently failed to provide reasonably adequate lighting facilities or suffi-

cient light'' on the steps of the stairway. Other counts in varying language charged defendant with negligence in both of these particulars. The sixth count, after setting out verbatim certain ordinances of the city of Chicago concerning places of amusement including motion picture theatres, charged that defendant "negligently and improperly failed to furnish the lights as required by said ordinances." Two of said ordinances (introduced in evidence) are as follows:

"Steps shall not be permitted in aisles *except* as extending from bank to bank of seats, and no riser shall be more than eight inches in height, and no tread shall be less than ten inches in width, and wherever the rise from bank to bank of seats is less than five inches, the floor of the aisle shall be made as an inclined plane, and where steps are placed in outside aisles or corridors they shall not be isolated but shall be grouped together, and a light shall be installed so that every place where there are steps in such aisles or corridors shall be clearly lighted."

"Where provisions are made for the lighting of steps which occur in the aisles or corridors, a light must be kept burning during the entire time that the audience is in the building and must be maintained in such a manner *as to properly illuminate such steps.*"

On the trial plaintiff was a witness in her own behalf, and, among other witnesses, she called her daughter, aged 13 years, J. W. Swanson, who was descending the stairway at the time of plaintiff's fall, and J. G. Terry, who was then occupying a seat at the foot and to the left of the stairway. For defendant four of its employees testified. It appears from uncontradicted testimony that the stairway was constructed of concrete and had eight or more steps; that the risers thereof were 7¾ inches in height and the treads 18 inches in width; that the rise from bank to bank of seats was more than five inches; that at the juncture of each riser and tread a beveled strip of wood was

firmly imbedded in the concrete; that upon the stairway a mat was laid, and upon the mat a carpet, stretched and held in place by nails driven into the strips of wood; that there were no defects in the construction of the stairway; and that, at the time of plaintiff's fall, the carpeting had not become loose, torn or worn.

As to the charge in the declaration of "uneven carpeting," causing plaintiff's fall, there was little or no evidence. Plaintiff testified: "I started down the stairs, and there wasn't any light. I couldn't see, so I felt my way the best I could. * * * When I got a few steps down something caught my heel, and I fell. * * * I had gone down three or four steps of the stairs. * * * I slipped with my right foot and in slipping I went clear down one step, and then my heel caught and threw me down, and I fell forward." Terry was the only witness for her who gave any testimony as to the condition of the carpet. He testified that shortly after the accident he made an examination of the *lower* three or four steps of the stairway and of the carpet thereon; that he did not find any holes or anything in the carpet; that right at the edge of the step the carpet felt *"very round"*; and that he did not reach any conclusion from his examination as to why plaintiff fell. It does not appear that any of the steps which he examined was the one upon which plaintiff slipped or stumbled. And three of defendant's witnesses testified to making examinations of the steps and carpeting shortly after the accident, and that then the carpeting was in good condition and stretched taut and smooth over the entire stairway. In our opinion, the evidence did not tend to show that plaintiff's fall was occasioned by "uneven carpeting," as charged.

As to the issue raised by other counts of the declaration, whether the stairway and steps were sufficiently lighted at the time of plaintiff's fall, the evidence was

conflicting. Railey, defendant's chief electrician at the theatre, testified in substance that he inspected all the lights prior to the first exhibition on the evening in question, and found them in good working order; that the theatre had what is called "cove" lighting in a large dome in the center of the ceiling; that in the dome there were many alternating white, red and blue lights; that only the blue lights were kept burning during an exhibition of a picture; that in addition to the dome lights there were several lights behind pink shades along the surrounding aisles of the balcony (the nearest one being about 15 feet away from where plaintiff fell), also certain clusters or torches of blue lights on the walls; that in all the middle aisles in the balcony there were so-called "Kausal" white lights, about 5 inches above the floor, so arranged as only to cast their rays downward; that they were of small power—10 watts—and were attached to every second seat next to the aisle, including every second seat to the left of said stairway, where they were about five feet apart; that there were no such lights to the right of the stairway, because of the "tunnel" exit; but that said exit, being lighted and being surrounded by open filigree ironwork, afforded some additional light to those ascending or descending the stairway. The three defendant witnesses, who testified to making an examination of the carpet on the stairway shortly after the accident, also testified that the "Kausal" lights, attached to the seats immediately to the left of the stairway, then were burning, yet it appears that they carried and used flashlights in making their examinations. Plaintiff's testimony, and that of her daughter and her witnesses, Swanson and Terry, was all to the effect that at the time of plaintiff's fall the aisle and stairway were very dark; that said "Kausal" lights were not then burning; and that there was no light on the stairway. And plaintiff's evidence in these particulars was not controverted, except inferen-

tially by defendant's witnesses as above mentioned. Furthermore, although it appears that about the time of plaintiff's fall several patrons of the theatre were leaving the theatre by said aisle and stairway, and many were seated thereby, yet defendant did not produce any witness who testified that then the "Kausal" lights were burning or that there was any light on the stairway.

We think that under the facts disclosed it was defendant's duty to its patrons to sufficiently light the aisle and stairway during the exhibition of a picture. It appears that during exhibitions they, with defendant's consent, entered or left the theatre at will by way of said aisle and stairway and by other aisles, etc. In 38 Cyc. pp. 268, 269, it is said: "The owner of a place of entertainment is charged with an affirmative positive obligation to know that the premises are safe for the public use, and to furnish adequate appliances for the prevention of injuries which might be anticipated from the nature of the performance * * *. He is required to use care and diligence to put and keep the premises and appliances in a reasonably safe condition for persons attending; and if he fails to perform his duty in this respect so that the premises or appliances are in fact unsafe, he may be held liable for personal injuries occasioned thereby * * *. Reasonable care is held to be the measure of duty, and the undertaking of the proprietor is held not to call for an application of the same strict rule of responsibility as in the case of common carriers. He is not an insurer." These rules have been held applicable as to the lighting of aisles, stairways, etc., of theatres (see note in 22 A. L. R. p. 670 *et seq.*) and to proprietors of moving picture theatres. (*Andre v. Mertens,* 88 N. J. L. 626, 628; *Oakley v. Richards,* 275 Mo. 266, 276; *Bennetts v. Silver Bow Amusement Co.,* 65 Mont. 340, 356; *Branch v. Klatt,* 165 Mich. 666, 671.) And in the instant case we think that the question

whether the stairway and steps were insufficiently lighted as charged, and whether defendant was negligent in failing to have them sufficiently lighted at the time of plaintiff's fall, were questions for the jury under the conflicting evidence to determine. And we think that their verdict in these particulars is amply sustained by the evidence. In the above cited case of *Andre v. Mertens,* the plaintiff after verdict recovered a judgment for injuries sustained in falling down certain inside stairs in defendant's motion picture theatre. It was contended that the judgment was erroneous because of insufficient evidence of defendant's negligence. It appears from the opinion that plaintiff, a girl of 19 years, entered the theatre during the progress of an exhibition, paid an admission fee, passed through the lobby, ascended a stairway leading to the balcony, took a seat and there remained for over one hour; that, having seen all she cared to see and wishing to depart, she went to the head of the stairway, and, finding that the stairway was unlighted and so dark that she could not see, paused to "feel" her way; and that, taking hold of a handrail along one side of the stairway, she proceeded slowly down the stairs, but that, when she reached a turn in the stairs, she lost her footing, fell, and was injured. The reviewing court affirmed the judgment, and, after referring to the rules governing the liability of the proprietors of a theatre for personal injuries suffered by a patron, said that "the question whether the defendants were negligent in failing to provide a light was for the jury; for the evidence tended to show that the defendants had assumed to provide lights for the stairway, and that their failure to provide them on the occasion of the plaintiff's exit resulted in her injury." In the instant case the evidence showed that defendant had assumed to provide lights for the stairway by the installation of said "Kausal" lights, and there was evidence that at the time plaintiff fell these "Kausal"

lights were not burning, and that the stairway was very dark.

Defendant's counsel strenuously contend that plaintiff, in leaving the theatre unattended and while a picture was being exhibited and the theatre was in a darkened condition, was guilty of such contributory negligence as a matter of law as bars any recovery by her. We cannot agree. We think that under all the evidence the question whether she was guilty of contributory negligence was for the jury to determine. It appears that it was quite usual for patrons to leave the theatre unattended and while a picture was being exhibited. Furthermore, plaintiff testified: "There was no attendant there with a flashlight at the time I started down the stairs." Substantially the same contention, as defendant's counsel make here, was made in *Andre v. Mertens, supra,* where the New Jersey court held, under the very similar facts, that the injured plaintiff could not be held guilty of contributory negligence as a matter of law, but that the question whether she was or not was for the jury to determine. (See also *Oakley v. Richards, supra; Bennetts v. Silver Bow Amusement Co., supra; Branch v. Klatt, supra.*) And we cannot say that the jury's verdict in the instant case, on the question of plaintiff's contributory negligence, is contrary to the evidence.

Defendant's counsel also contend (a) that the trial court erred in the admission of certain evidence offered by plaintiff; (b) that the trial court unduly assisted plaintiff's counsel in the examination of one of her witnesses, thereby leading the jury to believe that the judge favored plaintiff's side of the case; (c) that plaintiff's attorney in his closing argument to the jury made improper remarks which prejudiced defendant; (d) that the trial court erred in refusing to give certain instructions offered by defendant; and (e) in modifying (by adding certain words) instruction No. 10, offered by defendant and giving the same as modi-

fied. All of these contentions are argued at length in counsel's printed argument, and we have considered all of them and believe them to be without substantial merit. If any errors there were they were not prejudicial to defendant. We think that the jury were fully and fairly instructed, and, in view of the allegations of the sixth count and the proof introduced thereunder, that the court's modification of said instruction No. 10 was proper.

For the reasons indicated the judgment of the superior court is affirmed.

*Affirmed.*

FITCH and BARNES, JJ., concur.